[Crim. No. 52. Fifth Dist. Jan. 23, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOE PAUL
NAVARRO, Defendant and Appellant.

Joe Paul Navarro, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Barry L. Bunshoft, Deputy Attorney General, for Plaintiff and Respondent.

BROWN, J.—The appellant was charged by an information with the crime of violation of section 211 of the Penal Code, a felony, in that he and codefendant Vargas did wilfully and unlawfully rob a drugstore proprietor of narcotics and money. At the time of the offense, Vargas was armed with a .32 caliber automatic pistol and appellant was standing outside the store.

Appellant was represented by counsel throughout the jury trial and the jury found him guilty of robbery in the first degree. A motion for new trial was denied; probation was denied; and the appellant was sentenced to state prison. His counsel filed a notice of appeal from the judgment and order denying the motion for a new trial. (An order denying a new trial in a criminal case is no longer appealable (Pen. Code, § 1237) but may be reviewed on appeal from the judgment (*People* v. *Lessard,* 58 Cal.2d 447 [25 Cal.Rptr. 78, 375 P.2d 46]).)

On the day in question the appellant and the codefendant Vargas had been taking "yellow jackets" (barbiturate—nembutal[1]) which the appellant had been taking by mouth and a needle, but denied that he was taking any narcotics. Appellant having obtained a pistol and desirous of test-

---

[1] "Narcotics and Narcotic Addiction," by David W. Maurer.

firing the same, together with codefendant Vargas and two other friends, obtained some bullets for the pistol, went out to the edge of town and discovered that the pistol would not fire.

After returning to Merced, appellant and codefendant Vargas parked their car and both proceeded to walk to the front door of the pharmacy, Vargas having the pistol. While appellant paced up and down near the store and at approximately 6 p.m. Vargas knocked on the door of the store and when the proprietor appeared, stated that he wanted to have a prescription filled, drew the pistol and informed the proprietor that this was a holdup. They went to the back of the store where the proprietor was ordered to lie face down on the floor and remain quiet, and Vargas stated he wanted narcotics and wanted to know where they were kept and where the key was; he also ordered the proprietor to hand over any money he had on his person and such money and wallet were placed on the floor and the money extracted from the wallet; then Vargas looted the store supply of narcotics and drugs and placed them on the counter together with the daily receipts of $330.

Officer Lee of the Merced Police Department having received a radio message to investigate suspicious circumstances at the pharmacy, went to the pharmacy where he saw appellant standing about 75 to 90 feet from the door of the drugstore. To the officer's question as to what he was doing there, the appellant replied that he had just been to the dentist and was waiting for his sister to pick him up, and to the question as to whether anyone was inside the drugstore, the appellant replied, ''No, everyone has gone home.'' Because the proprietor's automobile was still parked next to the store, the officer took the appellant into the drugstore through the front door where he saw Vargas behind the prescription counter. While Vargas stated that he was preparing a prescription, the officer became suspicious, drew his pistol and ordered Vargas to put up his hands and come out from behind the counter.

Another officer arrived and both officers placed Vargas and the appellant in the patrol car; upon returning to the store the first officer discovered the narcotics cabinet open and a shoe box under the cabinet in which were several bottles and boxes of hypnotic drugs and $330 in currency, next to which was found a .32 caliber automatic pistol.

Both men were taken to the police station where it was observed that they had bloodshot eyes, dilated pupils and needle marks on their arms.

The appellant made conflicting written statements to the police on March 13th and 30th. In the latter statement he said that he had bought some bullets for the gun, that an attempt had been made to fire the pistol, that when he and Vargas got back to town he thought that Vargas was going to a house to hide the gun, that Vargas did tell him that he was going to stick up the drugstore and told him (appellant) to wait outside, and appellant said in his statement, "I was pretty loaded and I don't know whether or not I believed him or not." Appellant later testified that the statements were incorrect.

The codefendant Vargas testified that he did not remember anything about the robbery; that ". . . I wanted some dope and I was going to get it one way or the other. . . . I have no knowledge upstairs that I had planned this robbery . . . and I was going to get some dope, and I guess that is what I proceeded to do. . . . I don't claim to be nuts, I mean insane, but I claim that I was not sane at the time that I robbed the store."

The appellant filed a statement on appeal in propria persona, which is considered as his brief, though he cites no cases or authority. Summarized, appellant contends in this statement that he was 80-95 feet away from the store throughout the robbery; that it was improper for the judge to instruct the jury that if guilty he would be guilty of first degree armed robbery; that he has not received the benefit of a new law that a person under 21 years of age is eligible for a six months' term by the parole board for armed robbery, and that this was attempted robbery, that nothing was taken from the store; that they were arrested at the scene of the crime; that the transcripts show a conflict in the evidence with regard to his attorney, T. N. Peterson, that the court assumed in the transcripts that his attorney was also defending the codefendant Vargas who was appearing in propria persona; and that he was 17 when arrested and the other two friends who were 19 and 20 were tried in juvenile court and given six months' probation. The appellant cites no references to the transcript and cites no cases.

As to the appellant's contention that he was 17 years of age when arrested on March 13, 1962, he testified at the

trial that he was born March 13, 1944, which would have made him exactly 18 years old on the date the crime was committed on March 13, 1962.

Welfare and Institutions Code section 604, subdivision (a), provides that if a person is under the age of 18 years the court shall certify him to the juvenile court, and section 604, subdivision (b) provides:

''Whenever a case is pending in any court upon an accusatory pleading and it appears to the satisfaction of the judge that the person charged is under the age of 21 years, the judge may certify the case to the juvenile court of his county in the manner prescribed by subdivision (a) of this section.''

 The judge did not certify this case to the juvenile court and there is no showing of abuse of this discretionary power and the appellant being 18 years of age is entitled to no other rights than the rights of an adult being tried before the court. If in fact he was under 18 years of age, it was his duty or the duty of his attorney to call this fact to the attention of the court, and failure to do so is a waiver of any rights thus granted. (*People* v. *Luzovich,* 127 Cal.App. 465, 468 [16 P.2d 144]; *In re Gutierrez,* 1 Cal. App.2d 281, 286-287 [36 P.2d 712].)

Appellant is incorrect when he states that the court did not properly instruct the jury as to the first degree robbery. Penal Code section 211a provides: ''All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon is robbery in the first degree. All other kinds of robbery are of the second degree.''

 It is not necessary that a gun be loaded to be a deadly weapon (*People* v. *Salcido,* 186 Cal.App.2d 684 [9 Cal.Rptr. 57]); therefore, the court did properly instruct the jury that the crime was robbery in the first degree.

 There is sufficient evidence for the jury to have found that the appellant was a principal along with the codefendant Vargas in the first degree robbery. Both parties were users of barbiturates; appellant had obtained a pistol and gave the gun to codefendant Vargas; the two walked over to the front door of the drugstore and while appellant patrolled the area surrounding the store within a distance of 75-90 feet the codefendant Vargas, at gunpoint, forced the proprietor into the back of the drugstore and proceeded to commit the robbery. This was observed by a young girl witness who was sitting in a car parked near the

store. The appellant told the officer that he had been to the dentist and was waiting for his sister to pick him up, and furthermore, stated that there was no one inside the store. Appellant also admitted in his statement that co-defendant Vargas had told appellant that he was going to stick up the drugstore and for appellant to wait outside and that appellant thought Vargas was going to use his finger as a gun.

Section 31 of the Penal Code defines "principals" as including those who aid and abet in the commission of a crime (*People* v. *Ellhamer*, 199 Cal.App.2d 777, 781 [18 Cal.Rptr. 905]; *People* v. *Richardson*, 136 Cal.App.2d 342, 346 [288 P.2d 521]) and it is a fact for the jury to decide.

People serving as lookouts are aiders and abettors. (*People* v. *Silva*, 143 Cal.App.2d 162, 169 [300 P.2d 25].) Aiding and abetting makes a person guilty of first degree robbery even if he is not, himself, armed with a deadly weapon. (*People* v. *Perkins*, 37 Cal.2d 62, 64 [230 P.2d 353].)

Appellant's position that nothing was taken from the store and therefore this should be considered as attempted robbery is without merit. Penal Code section 211 covers the taking of property in the possession of another or from his immediate presence, against his will, accomplished by means of force or fear. The distance the property is taken may be very small. (*People* v. *Salcido, supra*, 186 Cal. App.2d 684, 687; *People* v. *Wellman*, 141 Cal.App.2d 101, 104 [296 P.2d 82].) In the *Salcido* case a wallet was taken, examined and returned because there was too little money in it; and in the *Wellman* case the robber said, " 'I want everything, all the money you've got in the register,' " and the bartender placed the cash on the bar, but the robber was captured before he could leave the bar.

We have carefully examined the transcript and find no conflict in the evidence and no assumption by the court that attorney Peterson was defending Vargas at the same time. Mr. Vargas conducted his own examination and cross-examination.

The purported appeal from the order denying a new trial is dismissed.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.