[Crim. No. 12749. Second Dist., Div. Three. Dec. 1, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
JONATHAN EARL STAMP et al., Defendants and Appellants.

## COUNSEL

Luke McKissack, under appointment by the Court of Appeal, Belli, Ashe, Ellison, Choulos & Lieff and Robert L. Lieff for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark W. Jordan, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**COBEY, Acting P. J.**—These are appeals by Jonathan Earl Stamp, Michael John Koory and Billy Dean Lehman, following jury verdicts of guilty of robbery and murder, both in the first degree. Each man was given a life sentence on the murder charge together with the time prescribed by law on the robbery count.

Defendants appeal their conviction of the murder of Carl Honeyman who, suffering from a heart disease, died between 15 and 20 minutes after Koory and Stamp held up his business, the General Amusement Company, on October 26, 1965, at 10:45 a.m. Lehman, the driver of the getaway car, was apprehended a few minutes after the robbery; several weeks later Stamp was arrested in Ohio and Koory in Nebraska.

Broadly stated, the grounds of this appeal are: (1) insufficiency of the evidence on the causation of Honeyman's death; (2) inapplicability of the felony-murder rule to this case; (3) errors in the choice of instructions given and refused; and (4) erroneous admission in evidence of the extrajudicial confessions of Stamp and Koory and the incriminating statement of Lehman.

On this appeal appellants primarily rely upon their position that the felony-murder doctrine should not have been applied in this case due to the unforeseeability of Honeyman's death.

### THE FACTS[1]

Defendants Koory and Stamp, armed with a gun and a blackjack, entered the rear of the building housing the offices of General Amusement

---

[1]This part of the opinion includes generally all facts relevant to appellants' contentions, except those relating to their fourth ground of appeal.

Company, ordered the employees they found there to go to the front of the premises, where the two secretaries were working. Stamp, the one with the gun, then went into the office of Carl Honeyman, the owner and manager. Thereupon Honeyman, looking very frightened and pale, emerged from the office in a "kind of hurry." He was apparently propelled by Stamp who had hold of him by an elbow.

The robbery victims were required to lie down on the floor while the robbers took the money and fled out the back door. As the robbers, who had been on the premises 10 to 15 minutes, were leaving, they told the victims to remain on the floor for five minutes so that no one would "get hurt."

Honeyman, who had been lying next to the counter, had to use it to steady himself in getting up off the floor. Still pale, he was short of breath, sucking air, and pounding and rubbing his chest. As he walked down the hall, in an unsteady manner, still breathing hard and rubbing his chest, he said he was having trouble "keeping the pounding down inside" and that his heart was "pumping too fast for him." A few minutes later, although still looking very upset, shaking, wiping his forehead and rubbing his chest, he was able to walk in a steady manner into an employee's office. When the police arrived, almost immediately thereafter, he told them he was not feeling very well and that he had a pain in his chest. About two minutes later, which was 15 or 20 minutes after the robbery had occurred, he collapsed on the floor. At 11:25 he was pronounced dead on arrival at the hospital. The coroner's report listed the immediate cause of death as heart attack.

The employees noted that during the hours before the robbery Honeyman had appeared to be in normal health and good spirits. The victim was an obese, 60-year-old man, with a history of heart disease, who was under a great deal of pressure due to the intensely competitive nature of his business. Additionally, he did not take good care of his heart.

Three doctors, including the autopsy surgeon, Honeyman's physician, and a professor of cardiology from U.C.L.A., testified that although Honeyman had an advanced case of atherosclerosis, a progressive and ultimately fatal disease, there must have been some immediate upset to his system which precipitated the attack. It was their conclusion in response to a hypothetical question that but for the robbery there would have been no fatal seizure at that time. The fright induced by the robbery was too much of a shock to Honeyman's system. There was opposing expert testimony to the effect that it could not be said with reasonable medical certainty that fright could ever be fatal.

### Sufficiency of the Evidence re Causation

■ Appellants' contention that the evidence was insufficient to prove that the robbery factually caused Honeyman's death is without merit. ■ The test on review is whether there is substantial evidence to uphold the judgment of the trial court, and in so deciding this court must assume in the case of a jury trial the existence of every fact in favor of the verdict which the jury could reasonably have deduced from the evidence. (*People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) ■ A review of the facts as outlined above shows that there was substantial evidence of the robbery itself, that appellants were the robbers, and that but for the robbery the victim would not have experienced the fright which brought on the fatal heart attack.[2]

### Application of the Felony-murder Rule

Appellants' contention that the felony-murder rule is inapplicable to the facts of this case is also without merit. ■ Under the felony-murder rule of section 189 of the Penal Code, a killing committed in either the perpetration of or an attempt to perpetrate robbery is murder of the first degree. This is true whether the killing is wilfull, deliberate and premeditated, or merely accidental or unintentional, and whether or not the killing is planned as a part of the commission of the robbery. (*People* v. *Lookadoo,* 66 Cal.2d 307, 314 [57 Cal.Rptr. 608, 425 P.2d 208]; *People* v. *Jennings,* 243 Cal.App.2d 324, 328 [52 Cal.Rptr. 329].) ■ *People* v. *Washington,* 62 Cal.2d 777, 783 [44 Cal.Rptr. 442, 402 P.2d 130], merely limits the rule to situations where the killing was committed by the felon or

---

[2] Appellants' position that the medical evidence was insufficient to prove the causal link between the robbery and the death because the physicians testifying to the result did so solely in response to a hypothetical question which was erroneous and misleading, and because the doctors answered in terms of "medical probability rather than actual certainty" is not well taken. A conviction on the basis of expert medical testimony, couched in terms of "reasonable medical certainty" rather than of "beyond a reasonable doubt" is valid (*People* v. *Phillips,* 64 Cal.2d 574, 579, fn. 2 [51 Cal.Rptr. 225, 414 P.2d 353]) and a hypothetical question need not state all the evidence in a case so long as it does not omit essential facts and issues. This did not occur here. (See *McCullough* v. *Langer,* 23 Cal.App.2d 510, 521 [73 P.2d 649], hear. den.) Furthermore, an appellate court will not overrule a trial court on the matter of the sufficiency of the qualifications of expert witnesses in the absence of a manifest abuse of such discretion. (*People* v. *Phillips,* 64 Cal.2d 574 at pp. 578-579, fn. 1 [51 Cal. Rptr. 225, 414 P.2d 353].) An examination of the record shows that there was no such abuse by the trial court in permitting the prosecution's expert medical witnesses to testify as to the cause of the heart attack.

his accomplice acting in furtherance of their common design. (See *People v. Gilbert,* 63 Cal.2d 690, 705 [47 Cal.Rptr. 909, 408 P.2d 365].)

■ The doctrine presumes malice aforethought on the basis of the commission of a felony inherently dangerous to human life.[3] (See *People v. Sears,* 62 Cal.2d 737, 745 [44 Cal.Rptr. 330, 401 P.2d 938]; *People v. Phillips,* 64 Cal.2d 574, 582 [51 Cal.Rptr. 225, 414 P.2d 353]; *People v. Washington, supra,* at p. 780.) This rule is a rule of substantive law in California and not merely an evidentiary shortcut to finding malice as it withdraws from the jury the requirement that they find either express malice or the implied malice which is manifested in an intent to kill. (*People v. Lilliock,* 265 Cal.App.2d 419, 431 [71 Cal.Rptr. 434].) ■ Under this rule no intentional act is necessary other than the attempt to or the actual commission of the robbery itself. When a robber enters a place with a deadly weapon with the intent to commit robbery, malice is shown by the nature of the crime. (*People v. Ketchel,* 71 Cal.2d 635, 642 [79 Cal. Rptr. 92, 456 P.2d 660]; *People v. Coefield,* 37 Cal.2d 865, 868 [236 P.2d 570].)

■ There is no requirement that the killing occur, "while committing" or "while engaged in" the felony, or that the killing be "a part of" the felony, other than that the few acts be a part of one continuous transaction. (*People v. Chavez,* 37 Cal.2d 656, 670 [234 P.2d 632].) Thus the homicide need not have been committed "to perpetrate" the felony. There need be no technical inquiry as to whether there has been a completion or abandonment of or desistance from the robbery before the homicide itself was completed. (*People v. Chavez, supra,* at pp. 669-670.)

■ The doctrine is not limited to those deaths which are foreseeable. (See 1 Witkin, Cal. Crimes (1963) §§ 78, 79, pp. 79-80; *People v. Chavez, supra,* at pp. 669-670.) Rather a felon is held strictly liable for *all* killings committed by him or his accomplices in the course of the felony. (*People v. Talbot,* 64 Cal.2d 691, 704 [51 Cal.Rptr. 417, 414 P.2d 633].) As long as the homicide is the direct causal result of the robbery the felony-murder rule applies whether or not the death was a natural or probable consequence of the robbery. ■ So long as a victim's predisposing physical condition, regardless of its cause, is not the *only* substantial factor bringing about his death, that condition, and the robber's ignorance of it, in no way destroys the robber's criminal responsibility for the death. (Cf. *People v.*

---

[3] In view of the fact that the Legislature has not seen fit to change the language of Penal Code section 189 since the decisions holding that the requisite malice aforethought is to be implied from the commission of those felonies inherently dangerous to human life, it must be presumed that these cases accurately state the law. (*People v. Hallner,* 43 Cal.2d 715, 720 [277 P.2d 393].)

*Moan,* 65 Cal. 532, 536-537 [4 P. 545]; *People* v. *Studer,* 59 Cal.App. 547, 552-554 [211 P. 233].) So long as life is shortened as a result of the felonious act, it does not matter that the victim might have died soon anyway. *(People* v. *Phillips, supra,* at p. 579.) In this respect, the robber takes his victim as he finds him.

### CLAIMED ERRORS IN INSTRUCTIONS

Appellants claim five errors in the jury instructions given and refused. They argue that: (1) the trial court erred in refusing to give their proffered instruction as to proximate cause; (2) the jury should have been instructed on the court's own motion that there must be a finding of specific intent to commit the robbery before the felony-murder rule can be applied; (3) the jury should not have been instructed on the felony-murder rule; (4) the jury should have been instructed on the matter of foreseeability; and (5) the felony-murder rule applies only when the killing was committed in order to perpetrate a felony, and not when the killing occurs merely in the perpetration of a felony. In accordance with our discussion of the felony-murder doctrine, we find the claimed instruction errors numbered (3), (4), and (5) to be without merit.

█ Appellants contend that the trial court erred in refusing their proffered instruction on proximate cause, reading as follows: "Where the defendant's criminal act is not the proximate cause of the death and the sole proximate cause was the negligent or reckless conduct of the victim, a conviction is unwarranted." They assert that article VI, section 13 of the California Constitution guarantees the right of a defendant to have the jury determine every material issue presented by the evidence.

It can be argued that the refusal of the trial court to give the instruction was justified. The evidence before the jury was not such that the jury could have reasonably assumed that negligent or reckless conduct by Honeyman was-the *sole* cause of his death. (See *People* v. *Bronson,* 263 Cal.App.2d 831, 842-843 [70 Cal.Rptr. 162], hear. den.) But, in any event, the three instructions given on the issue of the proximate causation of Honeyman's death were much more complete and accurate than appellant's quoted instruction.[4] Any error in this respect was harmless.

---

[4]"If the death of the victim occurred by natural causes and was not a proximate result of the defendants' unlawful activity, you must find the defendants not guilty of murder.

"To constitute a felonious homicide there must be, in addition to the death of a human being, an unlawful act which proximately caused that death.

"The proximate cause of death is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the death, and without which the result would not have occurred. It is the efficient cause—the one that

■ As to the second objection, since the jury was fully instructed both as to what constitutes robbery and as to what constitutes felony murder,[5] the court was not required to instruct them on its own motion that in order to apply the felony-murder rule, appellants must have had the specific intent to commit the robbery. This is so because the jury could not have found them guilty of murder under the felony-murder doctrine without first having found them guilty of robbery. Moreover, failure to instruct the jury that in order to apply the felony-murder doctrine appellants must have had the specific intent to commit the robbery does not constitute prejudicial error where, as here, the evidence permits of no other interpretation than that appellants had the specific intent to steal. (See *People* v. *Ford*, 60 Cal.2d 772, 792-793 [36 Cal.Rptr. 620, 388 P.2d 892].)

### CLAIMED ERRONEOUS ADMISSION OF CONFESSIONS AND INCRIMINATING STATEMENT

The getaway car, driven by defendant Lehman, was stopped at 11:08 and Lehman, the only one in it at that time, was advised of his rights to counsel,

necessarily sets in operation the factors that accomplish the death." (CALJIC No. 312, modified.)

"If a person unlawfully does an act or unlawfully sets in operation factors which are a proximate cause of another person's death, such conduct of the former constitutes an unlawful homicide even though the unlawful act or the factors set in operation were not the only cause of the death, and although the person killed had been already enfeebled by disease, injury, physical condition or other cause and although it is probable that a person in sound physical condition would not have died as a result of the act or the factors set in operation, and although it is probable that the act or the factors set in operation only hastened the death of the deceased person and that he would have died soon thereafter anyhow from another cause or other causes." (CALJIC No. 313-B, modified.)

[5]"Robbery is the felonious taking of personal property of any value in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (CALJIC No. 210.)

"Robbery which is perpetrated by a person or by two or more persons any one of them being armed with a dangerous or deadly weapon is robbery in the first degree. All other kinds of robbery are of the second degree.

"If you should find the defendant guilty of robbery, it will be your duty to determine the degree thereof as robbery of the first degree and to state that degree in your verdict." (CALJIC No. 210-A.)

"If a human being is killed by any one of several persons jointly engaged at the time of such killing in the perpetration of, or attempt to perpetrate, the crime of robbery, and if the killing is done in furtherance of a common design and agreement to commit such crime or is an ordinary and probable effect of the pursuit of that design and agreement, all such persons so jointly engaged are guilty of murder of the first degree, and this is the law whether such killing be intentional, unintentional, or accidental." (CALJIC No. 317.)

"Murder which is committed in the perpetration or attempt to perpetrate robbery, is murder of the first degree, whether the murder was intentional, unintentional, or accidental." (CALJIC No. 302-F, revised.)

to remain silent and that anything he might say could be used against him prior to any in-custody interrogation. Several weeks later Koory was apprehended in Omaha, Nebraska, and Stamp in Dayton, Ohio; each confessed to his part in the crime after having been advised of his right to counsel, to remain silent, and that any statement he might make could be used against him.

Appellants contend that the confessions of Koory and Stamp and the incriminating statement of Lehman were erroneously admitted in evidence because there was no affirmative showing that appellants had waived their rights to silence and counsel before giving these statements. It is also claimed that Stamp's confession is inadmissible as being the product of a prior illegally obtained confession. Since appellants failed to object on these grounds at trial, they are not entitled to raise these issues for the first time on appeal. (*People* v. *Ray,* 252 Cal.App.2d 932, 958 [61 Cal.Rptr. 1]; *People* v. *Crooks,* 250 Cal.App.2d 788, 793 [59 Cal.Rptr. 39].)

On our own motion we have examined the admissibility of these out of court statements under *People* v. *Aranda,* 63 Cal.2d 518, 530-531 [47 Cal.Rptr. 353, 407 P.2d 265]. We find no error because the trial court followed the recommended procedure in *Aranda* of deleting from each statement received in evidence all direct and indirect identifications of codefendants as well as any material which could be used against codefendants once their identities had been otherwise established. This objective was accomplished by the police officers stating only what the declarant said to each of them regarding the declarant's own part in the robbery. In addition the jury was instructed just prior to the admission of each statement and again at the close of the trial that each statement was received only against the particular declarant and not against any of his codefendants.

The judgment is affirmed.

Schweitzer, J., and Allport, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied January 28, 1970.