[Crim. No. 32594. Second Dist., Div. Five. May 10, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
MARVIN LESTER JACKSON, Defendant and Appellant.

## COUNSEL

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Robert C. Reback and Leighton A. Nugent, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ASHBY, J.**—In a court trial appellant was found guilty of robbery and of using a firearm within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1). He was sentenced to the state prison for a middle term of three years plus two years for the enhancement pursuant to section 12022.5.

■    Appellant's sole contention is that the use of a firearm finding should be stricken because the firearm had a defect in the linkage between the trigger and the hammer and could not successfully be fired simply by pulling on the trigger. This contention is without merit.

There is no question that appellant "used" the gun in committing the robbery, by pointing it at the victim when he demanded money. (*People v. Chambers,* 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024].) The gun was recovered a few minutes later where appellant was observed to drop it as he fled.[1]  It was a Rohm .38 special revolver. A police firearms expert testified that it would not fire as the manufacturer intended, by simply loading and pulling the trigger, because there was some problem in the linkage between the trigger and the hammer.[2]

The trial court found that on the night of the robbery appellant "could not have fired the weapon."[3] The court nevertheless concluded that appellant used a firearm within the meaning of the statute; in other words, that the statute does not require that the firearm be in operable condition. We hold the trial court's conclusion of law was correct.

Penal Code section 12022.5 provides: "Any person who personally uses a firearm in the commission or attempted commission of a felony, shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of two years, unless use of a firearm is an element of the offense of which he was convicted."

Nothing in this language expressly requires that the firearm be in operable condition. Appellant would add a requirement to the statute which it does not contain.[4]

---

[1]The record does not disclose whether the gun was loaded.

[2]It had all the necessary parts to fire a projectile, however, and could be fired by striking the hammer directly. Only a little force would be required. Even striking the hammer with one's hand could fire the weapon, although the hand might get cut in the process.

[3]We regard this as a factual finding that the firearm was inoperable. The court may well have found that the unusual techniques by which the gun could be fired (fn. 2, *ante*) were too impractical to be accorded significant weight. However, had the court found that the gun was operable, such finding would be supported by the substantial evidence. The gun could have gone off during a struggle, for instance. (Cf. *People v. Walls,* 85 Cal.App.3d 447, 454 [149 Cal.Rptr. 460] (noting potential for a gun to discharge when used as a bludgeon).)

[4]We view as specious appellant's claim that the Rohm .38 special revolver was literally not a "firearm" because in its then condition it could not "fire" normally. The weapon

*People* v. *Hayden,* 30 Cal.App.3d 446 [106 Cal.Rptr. 348], is in point. In that case, where the victims testified that the defendant pointed a revolver at them, but the revolver was not subsequently found, the defendant sought to have the section 12022.5 finding stricken from the judgment, "claiming the indispensability of evidence of the firearm's operable condition." (*Id.,* at p. 450.) The court rejected this contention on the following grounds: "There is no implication in section 12022.5 which requires the prosecution, as part of its burden of proof, to establish the weapon's operability. The statutory objective, as discerned in *People* v. *Chambers, supra,* rejects that implication. As pointed out in *Chambers,* the statute seeks to deter both physical harm and conduct which produces fear of harm. The fear may arise either from a gun that really shoots or from one which is designed to shoot and gives the appearance of shooting capability. Persons held at gunpoint have no stomach for inquiry. Danger radiates not only from the weapon, but from the defensive reactions of others. In response to the lawbreaker's weapon, operable or not, a victim or law officer may himself resort to a firearm. Further, a demand for affirmative proof of operability would allow the defendant to frustrate the statute by getting rid of the gun or concealing it. In view of the discerned objective of section 12022.5, it is enough that the prosecution produce evidence of a gun designed to shoot and which gives the appearance of shooting capability." (P. 452; fn. omitted.)

The gun in the instant case clearly met these standards. It was a firearm because designed by the manufacturer to shoot. It gave every appearance of having that capability.[5]

Our function is to interpret section 12022.5 to achieve its individual objective. (*People* v. *Hayden, supra,* 30 Cal.App.3d at pp. 451, 452.)[6] In our view the legislative intent would be frustrated by the "inoperability defense" proposed by appellant. The dangers referred to in *Hayden* are

---

was a firearm because it was manufactured and designed to be one. It was a defective firearm, but nevertheless a firearm.

[5]*People* v. *Norton,* 80 Cal.App.3d Supp. 14, 25 [146 Cal.Rptr. 343], cited by appellant, is consistent with *Hayden.* There the court merely held that in a prosecution for exhibiting a firearm (Pen. Code, § 417) the court should have instructed on the definition of a firearm, where the defendant claimed the weapon was a toy replica of a gun. But the definition approved in that opinion was a device *designed* to be used as a weapon from which a projectile may be expelled by the force of any explosion or other form of combustion. This is the equivalent of the "gun designed to shoot" test used in *Hayden* and satisfied in the instant case.

[6]In *People* v. *Chambers, supra,* 7 Cal.3d at p. 672, the court said, "The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that 'uses' be broadly construed."

present as well when the trial produces affirmative evidence of inoperability as when there is absence of evidence of operability. The victim is placed in fear and cannot be expected to inquire into the condition of the gun. The danger remains that the reaction by the victim or some third person to the appearance of the gun will cause harm to befall someone.[7] Thus we hold that *Hayden's* principles are not limited merely to the prosecution's prima facie case in chief. Section 12022.5 applies even if the evidence conclusively proves that the firearm was inoperable (cf. *People v. Hayden, supra,* 30 Cal.App.3d at p. 452; *People v. Williams,* 56 Cal.App.3d 253, 255, fn. 1 [128 Cal.Rptr. 408]; *People v. Torres,* 19 Cal.App.3d 724, 733 [97 Cal.Rptr. 139]), so long as there is evidence "of a gun designed to shoot and which gives the appearance of shooting capability." (30 Cal.App.3d at p. 452.)

The judgment is affirmed.

Stephens, J., concurred.

**KAUS, P. J.**—I concur. The uncontradicted evidence is that the gun could be fired, albeit in "some esoteric manner," as the trial court put it. We are not bound by the trial court's conclusion that this made the gun inoperable. To be sure, the trial court's expressed belief that on November 3, 1977, "Mr. Jackson could not have fired the weapon," is puzzling. My only explanation in the light of the clear evidence is that the court felt that Jackson could not have fired the weapon because he did not know how to. That, of course, is immaterial.

Appellant's petition for a hearing by the Supreme Court was denied July 5, 1979.

---

[7] We find unpersuasive appellant's attempt to reduce *Hayden* to absurdity by his argument that: (1) *Hayden* reasoning would apply to realistic looking toy guns; (2) toy guns are not firearms; therefore (3) *Hayden* is wrong. *Hayden* is obviously limited to firearms, i.e., guns manufactured and designed to be firearms.