[No. C007701. Third Dist. Oct. 28, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY REED STEELE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

## COUNSEL

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, J. Robert Jibson and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

NICHOLSON, J.—Defendant Jerry Reed Steele kidnapped 15-year-old Ashley L. at gunpoint, took her to a secluded spot on a mountain highway and committed multiple sex crimes. After trial by jury, defendant was convicted of two counts of forcible rape (Pen. Code, § 261, subd. (2)), one count each of forcible oral copulation (§ 288a, subd. (c)), rape by a foreign object (§ 289, subd. (a)), and kidnapping (§ 207), and firearm enhancements incidental to the oral copulation and kidnapping convictions (§§ 12022.3, 12022.5).[1] The trial court sentenced defendant to 19 years and 4 months in state prison. On appeal, defendant claims the trial court should have

---

[1] Undesignated statutory references are to the Penal Code.

instructed the jury, sua sponte, concerning its duty to agree on the single act constituting each crime. He also contends the court, during sentencing, made prohibited dual use of facts and relied on improper factors to (1) impose consecutive sentences, (2) choose an aggravated base term, and (3) enhance the sentence for the two firearm use enhancements. Finally, he argues he did not use "a firearm or any other deadly weapon" in violation of section 12022.3 during the commission of forcible oral copulation.

In part I of the Discussion, the published portion of this opinion, we hold defendant violated section 12022.3, providing a sentence enhancement for use of "a firearm or any other deadly weapon," even though the firearm he used was unloaded. In the unpublished portion, part II of the Discussion, we agree the court made prohibited dual use of facts, but find the error harmless. In all other respects, we hold the trial court acted properly.

FACTUAL AND PROCEDURAL HISTORY

Defendant picked up three teenaged girls hitchhiking in Placerville during the late evening hours of July 5, 1989. He drove them in his truck toward Lake Tahoe on Highway 50 until he stopped near St. Pauli's Inn and dropped the three girls off along the highway. He drove away from the girls, but soon returned and forced one of the girls, Ashley, at gunpoint, to get back in his truck.

Defendant drove back toward Placerville and turned onto a side street. According to Ashley's testimony, defendant forced her to disrobe and engage in three acts of sexual intercourse, two acts of oral copulation, and two acts of penetration by a foreign object, all against her will. Defendant held a gun to her head as he forced her to orally copulate him. Ashley testified defendant showed her the gun was not loaded after he had committed the sex crimes. On the other hand, defendant testified he showed her his gun was not loaded after he had forced her into his truck at gunpoint and before they engaged in sexual acts. He also claimed Ashley voluntarily disrobed at the scene, and they engaged in one consensual oral copulation and one consensual sexual intercourse.

## DISCUSSION

## I

### *Weapon Enhancement Under Penal Code Section 12022.3*

■ The trial court instructed the jury "[t]he 'firearm' need not be operable" to find a violation of section 12022.3.[2] The evidence indicated defendant's firearm was not loaded, and the jury found he used that firearm within the meaning of section 12022.3. While he willfully and aggressively, although deceptively, used his firearm as if loaded when he held it to Ashley's head and forced her to orally copulate him, he asserts this enhancement was improperly found and imposed because, in fact, the firearm was unloaded.[3] Even as he took apparent delight in mocking Ashley by showing her his weapon was unloaded *after* the forced act of oral copulation, he now seeks to transform mockery into refuge. In this context, we must determine whether he violated section 12022.3 when he used an unloaded firearm in the commission of the designated offense.

A defendant violates an enhancement statute proscribing the possession or use of a firearm even though the firearm was unloaded or inoperable at the time of the crime. (See *People* v. *Nelums* (1982) 31 Cal.3d 355, 358-360 [182 Cal.Rptr. 515, 644 P.2d 201]; *People* v. *Jackson* (1979) 92 Cal.App.3d 899 [155 Cal.Rptr. 305].) For example, in *Nelums*, the court held possession of an inoperable firearm during a robbery violated section 12022, subdivision (a), which provides for an enhancement when a person commits a felony while armed with a firearm. (*Nelums, supra,* at p. 360.)[4] Construing section 12022.5 providing an enhancement for use of a firearm in the commission of a felony, the court in *Jackson* held use of an inoperable gun is sufficient to impose the enhancement. (*Jackson, supra,* at p. 903.)[5]

---

[2]At the time of defendant's crimes, section 12022.3 read: "For each violation of Section 261, 264.1, 286, 288, 288a [forcible oral copulation] or 289, and in addition to the sentence provided, any person shall receive an enhancement (a) of three years if such person uses *a firearm or any other deadly weapon* in the commission of such violation or (b) of two years if such person is armed with a firearm or any other deadly weapon." (Italics added.)

[3]As required by Government Code section 68081 (*Adoption of Alexander S.* (1988) 44 Cal.3d 857, 864-865 [245 Cal.Rptr. 1, 750 P.2d 778]), this court requested and received supplemental briefing from both parties on the following question: "Given the evidence showing the firearm was not loaded during commission of the oral copulation, did defendant violate Penal Code section 12022.3? (See *People* v. *Nelums* (1982) 31 Cal.3d 355 [182 Cal.Rptr. 515, 644 P.2d 201]; *People* v. *Brookins* (1989) 215 Cal.App.3d 1297 [264 Cal.Rptr. 240].)"

[4]Section 12022, subdivision (a), punishes "any person who is *armed with a firearm* in the commission or attempted commission of a felony . . . ." (Italics added.)

[5]Section 12022.5, subdivision (a), punishes "any person who *personally uses a firearm* in the commission or attempted commission of a felony . . . ." (Italics added.) This enhancement was alleged incidentally to count VIII, kidnapping. The court gave essentially the same

Statutes penalizing possession or use of a "firearm" are unlike those penalizing use of a "deadly weapon." While a "firearm," as discussed above, need not be loaded or operable, a "deadly weapon" means "either an instrument designed to cause death or great bodily injury or . . . an instrument used in such a fashion as to be capable of causing death or great bodily injury. Under this settled meaning, an unloaded firearm not used as a bludgeon meets neither definition and hence is not a deadly weapon." (*People* v. *Brookins* (1989) 215 Cal.App.3d 1297, 1307 [264 Cal.Rptr. 240].)[6]

Without defining either, the Legislature joined the terms "firearm" and "deadly weapon" in section 12022.3 in a way which does not conform with judicial definitions established in cases interpreting enhancement and possession statutes. Section 12022.3 provides for an enhancement "if [such] person uses a firearm or any other deadly weapon . . ." in the commission of specified sexual offenses, including oral copulation. The phrase "firearm or any other deadly weapon" presupposes a firearm is a deadly weapon. However, under the definitions summarized above, there is not always a basis for that presupposition. A firearm, under case law, is often, uncritically, found not to be a deadly weapon unless it is loaded and operable or it is or used or threatened to be used as a bludgeon.

Both parties cite canons of statutory interpretation to support their opposing views of section 12022.3. Defendant says we must give significance to every word and phrase. (See *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154].) He adds there is a " 'well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the Legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and

definition of "firearm" for both this allegation and the ones made in connection with section 12022.3 incidental to the sex offenses. (See fn. 2 *ante*, p. 791.) To do otherwise would cloud the relatively simple issue presented to the jury of whether a defendant used a firearm. Given the apparent confusion of the courts in determining what firearms and deadly weapons are, it is not unrealistic to foresee confusion in the jury room if the jury is instructed on conflicting definitions of "firearm."

[6]Historically, the threat or use as a bludgeon seems to have become a requirement for conviction of assault with a deadly weapon based on an unloaded firearm. (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person, §§ 417-418, pp. 478-480.) Thus, an unloaded firearm may be a deadly weapon in these limited circumstances. The People make no effort here to discuss the matter, nor do they contend defendant used or threatened to use the firearm as a bludgeon. Therefore, we assume defendant did neither. There is no dispute defendant's firearm was designed to shoot, gave the reasonable appearance of a shooting capability, and was used by defendant as if loaded and capable of shooting, even though, known only to him, it was actually unloaded at the time of the forced oral copulation. (See *People* v. *Jackson, supra*, 92 Cal.App.3d at p. 902.)

technical sense which had been placed upon them by the courts.' " (*City of Long Beach* v. *Payne* (1935) 3 Cal.2d 184, 191 [44 P.2d 305].) Using these canons, defendant contends we must interpret "firearm" to mean only those which are loaded because "any other deadly weapon" modifies "firearm" to mean only those firearms which are also deadly weapons. Any other interpretation, concludes defendant, would disregard the Legislature's use of the word "other." To do so, however, would alter the definition of "firearm" to include only loaded and operable firearms.

Applying the same canons along with our own pronouncement that "[i]t is axiomatic we must avoid construction of a statute which renders terms mere surplusage" (*People* v. *Brookins, supra,* 215 Cal.App.3d at p. 1309), the People contend we must interpret "firearm" to include those which are unloaded. Any other interpretation, declare the People, would disregard the Legislature's use of the word "firearm" after the courts had interpreted firearm to include those which are unloaded. This, conclude the People, would render the word "firearm" mere surplusage because the subset "firearms" would be completely encompassed in the superset "deadly weapons." To do as the People suggest, however, would disregard the Legislature's use of the word "other" because "firearm or any other deadly weapon" necessarily infers "firearm" is an entirely encompassed subset of "deadly weapon."

The parties thus cast a canonical conundrum which prompts further analysis. First, we could assume the Legislature intended to use the terms "firearm" and "deadly weapon" as they have been defined in the cases. This approach, however, would require us to conclude the Legislature mistakenly used the word "other" because "firearm" is not a completely encompassed subset of "deadly weapon." Second, we could assume the Legislature did not intend to use the terms "firearm" and "deadly weapon" in the same sense they have been used in other statutes and interpreted in previous cases.[7] This approach, however, apparently contradicts the canon of statutory

---

[7]Section 12022.3 was enacted in 1979. (Stats. 1979, ch. 944, § 17, p. 3263.) In *People* v. *Hayden* (1973) 30 Cal.App.3d 446, 452 [106 Cal.Rptr. 348], the court held the prosecution need not prove a gun's operability under its burden of proof concerning section 12022.5 providing for an enhancement for use of a firearm during commission of certain crimes. While, prior to 1979, it was clear a gun need not be loaded to be characterized as a firearm, there was some confusion concerning whether an unloaded firearm not used as a bludgeon was a deadly weapon. (*People* v. *Navarro* (1963) 212 Cal.App.2d 299, 303 [27 Cal.Rptr. 716]; *People* v. *Orr* (1974) 43 Cal.App.3d 666, 672 [117 Cal.Rptr. 738].) In *Navarro,* the court stated for purposes of a conviction for robbery with a dangerous or deadly weapon (former Pen. Code, § 211a), "[i]t is not necessary that a gun be loaded to be a deadly weapon . . . ." (212 Cal.App.2d at p. 303.) In *Orr,* on the other hand, the court held "pointing an unloaded gun at another person with no effort or threat to use it as a bludgeon, is not an assault with a deadly weapon. (43 Cal.App.3d at p. 672.) While it is unclear whether an unloaded firearm was a deadly weapon under case law interpretations existing at the time section 12022.3 was

interpreta tion which says we should presume the Legislature used the terms in the manner defined by the courts.

Did the Legislature understand the courts' interpretations of "firearm" and "deadly weapon" and misuse the word "other," or did the Legislature disregard the courts' previous interpretations of "firearm" and "deadly weapon"? It is rather unlikely the Legislature misused the word "other." Instead, it is easier to believe the Legislature did not use the terms "firearm" and "deadly weapon" exactly as defined by the courts. The presumption the Legislature used the terms in "the precise and technical sense which had been placed upon them by the courts" (*City of Long Beach* v. *Payne, supra*, 3 Cal.2d at p. 191) is rebutted by the Legislature's wording which shows its intended definition of the terms makes "firearm" a subset of "deadly weapon." We must, therefore, interpret section 12022.3 as though the Legislature did not intend to apply prior judicial interpretations of "firearm" and "deadly weapon." (See *People* v. *Raner* (1948) 86 Cal.App.2d 107, 112 [194 P.2d 37], recognizing the Legislature may intend different definitions of "deadly weapon" in different statutes.)

It is not helpful to attempt to define "firearm" in a way in which it fits completely within the definition of "deadly weapon" cited above. A firearm does not cease to be a firearm when it is unloaded or inoperable. On the other hand, the term "deadly weapon" is more susceptible to a practical behavioral interpretation. In fact, we need only recognize the meaning of "deadly weapon," for purposes of this statute, includes all firearms, whether loaded or unloaded.

The mere exhibition of a firearm, the "classic instrument[] of violence" (*People* v. *Grubb* (1965) 63 Cal.2d 614, 620 [47 Cal.Rptr. 772, 408 P.2d 100]), can invoke deadly violence from another and even deadly fear. (*People* v. *Washington* (1965) 62 Cal.2d 777, 779 [44 Cal.Rptr. 442, 402 P.2d 130]; *People* v. *Stamp* (1969) 2 Cal.App.3d 203, 208-209 [82 Cal.Rptr. 598].) In *Washington*, two men robbed a gasoline station. The owner took a revolver from his desk. When one of the robbers pointed his revolver at the owner, the owner shot and killed him. (62 Cal.2d at p. 779.) In *Stamp*, the defendant robbed a business establishment. Armed with a gun, he went into the owner's office, escorted the owner out of the office, and then fled. The owner died shortly thereafter of a fear-induced heart attack. Even though a doctor testified the victim suffered from advanced heart disease, on all the evidence, fear was found to have induced the fatal seizure. Thus, there was

---

enacted, we assume, for the purpose of argument, "deadly weapon" did not include an unloaded firearm. As will become evident, this apparent confusion has no bearing on our conclusion.

sufficient causation to support a first degree murder conviction. (2 Cal.App.3d at pp. 208-209.)

These are but two of the countless case law accounts which portray the potentially deadly consequences of using a firearm in the commission of a crime without pulling the trigger.[8] They demonstrate mere display of a firearm, whether loaded or unloaded, can be, and often is, deadly. Thus, the most reasonable interpretation of "firearm or any other deadly weapon" found in section 12022.3 defines "deadly weapon" to include any firearm, whether loaded or unloaded. Absent express legislative intent to the contrary, that is the interpretation we adopt. Accordingly, the trial court properly instructed the jury the firearm need not have been loaded to find true the enhancement under section 12022.3. Thus, defendant's sentence was properly enhanced based on the jury's finding.

II*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Marler, Acting P. J., concurred.

**DAVIS, J.,** Concurring and Dissenting.—

"My object all sublime

"I shall achieve in time—

"To make the punishment fit the crime."

Gilbert, The Mikado, or the Town of Titipu (1885), act II

The repulsiveness of defendant's conduct notwithstanding, the Legislature has prescribed an additional three years to defendant's sentence pursuant to

[8]In 1970, Justice Coakley of the Fifth District Court of Appeal, in a concurring opinion, challenged the Legislature to expressly state pointing an unloaded gun at another with a threat to discharge it constitutes assault with a deadly weapon. (*People* v. *Mosqueda* (1970) 5 Cal.App.3d 540, 546-547 [85 Cal.Rptr. 346].) He stated: "It is not difficult to conjure situations in which pointing an unloaded gun at another in a threatening manner can have most serious consequences, e.g., (1) induce a heart attack on the part of the person threatened, (2) cause the driver of a car so threatened to speed away, killing or injuring himself and pedestrians, and (3) permit a suspect to hold at bay and then escape from police officers investigating a crime. [Fn. omitted.]" (*Ibid.*)

*See footnote, *ante,* page 788.

Penal Code section 12022.3 only if defendant used a "deadly weapon" in carrying out his crime.[1] This court has recognized in the past that when the Legislature uses the term "deadly weapon" to describe a firearm it does not mean an unloaded firearm that is not used as a club or bludgeon. (*People* v. *Brookins* (1989) 215 Cal.App.3d 1297, 1303-1308 [264 Cal.Rptr. 240].) Here, the majority seeks to transform the clear and unambiguous definition of "firearm" set forth in section 12022.3 into a mandate for additional punishment that the Legislature has seen fit not to impose. Since the evidence is uncontradicted that the firearm defendant used was unloaded and not used as a club or bludgeon, the jury's finding regarding the section 12022.3 charged enhancement should be reversed. In all other respects I agree with the conclusions reached by the majority.

The trial court instructed the jury: "If you find the Defendant guilty of Counts I through VII, you must determine whether the defendant personally used a firearm in the commission of such crime. [¶] The word "firearm" includes a handgun. The firearm need not be operable."[2] The facts presented regarding defendant's use of a firearm established, without contradiction, that the firearm was unloaded and not used as a club or bludgeon. Under these circumstances the trial court erred in so instructing the jury, and there was no substantial evidence supporting the jury's finding regarding the section 12022.3 enhancement.

At the time of defendant's crimes, section 12022.3 read in pertinent part: "For each violation of Section 261, 264.1, 286, 288, 288a [forcible oral copulation] or 289, and in addition to the sentence provided, any person shall receive an enhancement (a) of three years if such person *uses a firearm or any other deadly weapon* in the commission of such violation or (b) of two years if such person is *armed with a firearm or any other deadly weapon.*" (Italics added.)

When a statute broadly proscribes the "use of a firearm" in the commission of a crime, it is settled that the prosecution need not establish that the gun was loaded in order to bring the defendant's conduct within the statute.

---

[1] All further undesignated statutory references are to the Penal Code.

[2] The trial court mistakenly relied on the language of CALJIC No. 17.19.1 (1989 rev.). The comment to CALJIC No. 17.19.1 provides: "It appears to the Committee that operability of a firearm is immaterial, and not an element of this enhancement. In *People* v. *Nelums* (1982) 31 Cal.3d 355, 359, 182 Cal.Rptr. 515, 517, 644 P.2d 201, 203, the court approved the holding in *People* v. *Jackson* (1979) 92 Cal.App.3d 899, 155 Cal.Rptr. 305, not an element of the enhancement per Penal Code, § 12022.5 [*sic*]. Since § 12022.3 uses the same language (use of a firearm), the same principle should apply." In addition to being almost unintelligible, the comment fails to recognize that neither *Nelums* nor *Jackson* interpreted statutory language that defined the firearm at issue as a "deadly weapon."

(See, *People* v. *Wolcott* (1983) 34 Cal.3d 92, 102 [192 Cal.Rptr. 748, 665 P.2d 520], interpreting section 12022.5; *People* v. *Nelums* (1982) 31 Cal.3d 355, 359-361 [182 Cal.Rptr. 515, 644 P.2d 201] [gun need not be operable to violate a proscription on the commission of a crime while "armed with a firearm"].) To prove a defendant "used a firearm" the prosecution need only establish "conduct which [actually] produces a fear of harm or force by means of display of a firearm in aiding the commission of one of the specified felonies." (*People* v. *Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024].) The display of a firearm in a menacing manner during the commission of a felony will constitute "use of a firearm." (*People* v. *Hays* (1983) 147 Cal.App.3d 534, 543-549 [195 Cal.Rptr. 252].)

When a statute proscribes use of a "deadly weapon," this court has held that use of an unloaded gun not used as a club or bludgeon will not satisfy the statute. (*People* v. *Brookins, supra,* 215 Cal.App.3d at p. 1308 [holding use of an unloaded gun in a robbery did not constitute a "robber[y] involving the use of . . . deadly weapon" for purposes of a section 667.7, subdivision (a) enhancement; see also *People* v. *Orr* (1974) 43 Cal.App.3d 666, 671-672 [117 Cal.Rptr. 738] ["pointing an unloaded gun at another person with no effort or threat to use it as a bludgeon, is not an assault with a deadly weapon"]; *People* v. *Brewster* (1969) 276 Cal.App.2d 750, 753 [81 Cal.Rptr. 237] [defendant armed with an unloaded gun is not in possession of a "deadly weapon" for purposes of probation eligibility]; *People* v. *Raner* (1948) 86 Cal.App.2d 107, 111-113 [194 P.2d 37] [holding defendants who were armed with an unloaded gun during a robbery were not ineligible for probation under a statute which precluded probation when a defendant was armed with a deadly weapon].) When the Legislature wants to include unloaded firearms in the definition of "deadly weapon" for a particular statute, it has done so explicitly. (See *People* v. *Brookins, supra,* 215 Cal.App.3d at p. 1307 [discussing former § 3024, subd. (f) and its predecessor statute, which defined "deadly weapon" for the limited purpose of that statute as "*any* . . . pistol, revolver or any other firearm"].) Absent such a special definition the term "deadly weapon" has not been used by the Legislature to include an unloaded firearm not used as a club or bludgeon.

Here, section 12022.3 provides that a defendant will receive a three-year enhanced sentence "if [such] person *uses a firearm or other deadly weapon* in the commission" of certain specified offenses. [Italics added.] The Legislature has elected not to define firearm in broad terms either without any limitation at all or by using the term "dangerous or deadly weapon." Instead the Legislature, in enacting section 12022.3, chose to restrict firearm uses to

those that constitute use of a "deadly weapon."[3] Where courts have construed the meaning of a particular word or expression, and the Legislature subsequently uses these exact words in the same connection, we presume that the Legislature used them in the precise and technical sense which had been placed upon them by the courts. (*In re Jeanice D.* (1980) 28 Cal.3d 210, 216 [168 Cal.Rptr. 455, 617 P.2d 1087].) "Deadly weapon" is a term with an understood precise and technical meaning when used to define firearm. (*People* v. *Brookins, supra,* 215 Cal.App.3d at pp. 1303-1308.) An unloaded firearm not used as a club or bludgeon is not a "deadly weapon." Since the express language of section 12022.3 limits its application to "firearms and other deadly weapons," the jury's finding on this enhancement should be reversed.

Appellant's petition for review by the Supreme Court was denied January 30, 1992.

---

[3]The majority puts undue emphasis on the Legislature's decision to single out "firearm" as a subset of "deadly weapon." The Legislature has frequently singled out certain weapons as examples of an broader category of weapons it is specifying. (See Pen. Code, §§ 12023, 12025, 12026, 12026.1, 12100, 12101, setting forth pistol and revolver as subsets of "firearm capable of being concealed upon the person"; 12090, prohibiting tampering with "the name of the maker, model, manufacturer's number, *or other mark of identification . . .* on any pistol, revolver, *or any other firearm . . .*" [italics added]; 12402, subd. (b), defining tear gas weapon as "[a]ny revolvers, pistols, fountain pen guns, billies, *or other form of device, portable or fixed, intended for the projection or release of tear gas . . .*" [italics added].)