Filed 8/8/13  P. v. Thrower CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALAN TODD THROWER,<br><br>Defendant and Appellant. | F062872<br><br>(Super. Ct. No. F10901635)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  W. Kent Hamlin, Judge.

Patricia L. Watkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant Alan Thrower of second degree robbery with personal use of a firearm.  (Pen. Code, §§ 211; 212.5, subd. (c); 12022.53, subd. (b).)[1]  He was

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

sentenced to a total prison term of 12 years, including a mandatory 10-year enhancement for firearm use under section 12022.53. Thrower now challenges the sufficiency of evidence in support of the jury's finding that he used an actual "firearm" within the meaning of sections 12001 and 12022.53. He also alleges that prosecutorial misconduct occurred during closing argument at trial. We affirm the judgment.

## FACTUAL AND PROCEDCURAL BACKGROUND

On March 29, 2010, Alan Thrower exited a Rite Aid drugstore in Fresno without paying for merchandise concealed in his clothing. A store employee, Mark Barnier, followed Thrower to the parking lot outside of the store. Thrower told Mr. Barnier to leave him alone. When Mr. Barnier continued to approach, Thrower produced a gun and pointed it at his chest, commanding that he "back the fuck up." Mr. Barnier halted and raised his hands in the air, at which point Thrower fled on foot.

Responding to a 911 call made by Mr. Barnier, police quickly apprehended Thrower a few blocks away from the store. He was found in possession of the stolen merchandise and a change of clothes. The gun was never recovered.

The Fresno County District Attorney charged Thrower by amended information with a single count of second degree robbery. Enhancement allegations under sections 12022.5 and 12022.53 for personal use of a firearm were included in the charging document. A subsequent jury trial focused on the question of whether the object used by Thrower was truly a firearm, as opposed to a replica or fake gun.

According to Mr. Barnier, Thrower brandished something that "looked like a gun…a really small double-barrel shotgun," about 10 inches long. Mr. Barnier was able to view the object for approximately four seconds while standing five to six feet in front of Thrower. A second witness, Adrianna Garcia, saw the object from approximately the same distance and for a similar length of time. Ms. Garcia estimated the gun was 12 or 13 inches long.

Based on his own experience with firearms, Mr. Barnier thought most shotguns were at least 24 inches long. Even so, the weapon used by Thrower appeared to him to be authentic. He acknowledged it was possible the gun had been a fake, but testified to his personal belief that it was a real firearm.

On cross-examination, defense counsel asked Mr. Barnier and Ms. Garcia to view a series of photographs ("Exhibit V") depicting an object consistent with their descriptions of Thrower's weapon. Both witnesses testified that Exhibit V looked like the gun used in the robbery. It was later revealed that the photographs were of a fake double-barrel shotgun which the defense team found on the Internet after searching for images of replica firearms.

David Schiavon, a private investigator and competitive sportsman, was retained by the defense as an expert witness. Mr. Schiavon testified that fake shotguns with shortened or "sawed-off" barrels can be easily purchased from online retailers. He had never seen a real double-barrel shotgun measuring only 10 inches, and explained that modifying a shotgun to that length can dangerously impair its functionality. Mr. Schiavon conceded on cross-examination that some shotguns will function even if they are shortened to 10 inches.

The jury returned a guilty verdict on the second degree robbery count and found the firearm enhancement allegations had been proven beyond a reasonable doubt. Thrower was sentenced to the mitigated term of two years for robbery, plus a mandatory 10-year consecutive sentence under section 12022.53, resulting in a total prison term of 12 years. Imposition of sentence on the section 12022.5 enhancement was precluded by subdivision (f) of section 12022.53.

## DISCUSSION

### I. Substantial Evidence Supports the Firearm Enhancements

Thrower argues there was insufficient evidence to support the enhancement findings under sections 12022.5 and 12022.53. Both statutes impose additional penalties

3.

for personal use of a firearm during the course of a felony.  (§§ 12022.5, subd. (a); 12022.53, subd. (b).)  Section 12022.53 applies when a defendant is found to have personally used a firearm in the commission of a robbery.  (§ 12022.53, subd. (a)(4).)  The concept of "use" encompasses the act of pointing a firearm at another person or displaying a firearm in a threatening manner.  (*People v. Palacios* (2007) 41 Cal.4th 720, 725 & fn. 3; *People v. Granado* (1996) 49 Cal.App.4th 317, 322, 325.)

For purposes of these enhancements, a "firearm" is defined as "a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion."  (§§ 12001; 16520, subd. (a).)  The firearm need not be operable to support a finding of use.  (§ 12022.53, subd. (b); *People v. Bland* (1995) 10 Cal.4th 991, 1005.)  However, replica weapons, imitation or toy guns, pellet guns, and other objects that do not shoot projectiles by force of explosion or combustion are not considered firearms.  (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435 (*Monjaras*); *People v. Jackson* (1979) 92 Cal.App.3d 899, 903, fn. 7.)

Although he concedes his "use" of an object resembling a firearm, Thrower insists the evidence establishes an equal likelihood that the gun was a replica.  His contention is based upon the defense evidence presented at trial, the fact that the gun was never fired during the robbery, and the prosecution's inability to produce the physical object itself.  Given the legitimate possibility the gun was not real, Thrower claims the prosecution failed to prove the enhancement allegations beyond a reasonable doubt.

Under the applicable standard of review, the jury's findings are reviewed for substantial evidence.  (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 681.)  "A substantial evidence inquiry examines the record in the light most favorable to the judgment and upholds it if the record contains reasonable, credible evidence of solid value upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question.  Once such evidence is found, the substantial evidence test is satisfied.  [Citation.]  Even when there is a significant amount of countervailing evidence, the

4.

testimony of a single witness that satisfies the standard is sufficient to uphold the finding." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052, italics in original.)

Reversal is not warranted unless the evidence is insufficient to support the verdict under any hypothesis. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We cannot reweigh the evidence, reinterpret the evidence, or substitute our own judgment for that of the jury. (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.) "If the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.)

Proof of a defendant's use of a firearm during a robbery does not require physical production of the weapon. (*People v. Aranda* (1965) 63 Cal.2d 518, 532 (*Aranda*), superseded by constitutional amendment on other grounds as stated by *People v. Fletcher* (1996) 13 Cal.4th 451, 465.) "Testimony by witnesses who state that they saw what looked like a gun, even if they cannot identify the type or caliber, will suffice." (*Ibid.*) "If the weapon cannot be found, the jury may … draw an inference from the circumstances surrounding the robbery that the gun was [real]. Testimony to the effect that the defendant was flourishing the [gun] or pointing it at the victim and was using threatening words or conduct indicating that he intended to fire it if his demands were not met would be evidence from which the inference could be drawn." (*Id.* at p. 533.)

The possibility that Thrower's gun was a replica hardly aids his appeal since we are required to indulge every reasonable inference the trier of fact could have drawn from the evidence. (*People v. Mendez* (2010) 188 Cal.App.4th 47, 56.) Such inferences can be drawn from Thrower's efforts to prevent the store employee from detaining him; he pointed the gun at his chest as if he intended to fire it if Mr. Barnier did not "back the fuck up." (See *Aranda*, *supra*, 63 Cal.2d at p. 533.) Thrower also disposed of the weapon prior to his encounter with police, which is arguably indicative of the gun's authenticity. Thus, while the circumstantial evidence may have been open to different

interpretations, there was substantial evidence to support the interpretation chosen by the jury, i.e., that the object displayed was a firearm. (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793 ["'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, . . . it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt'"].)

Furthermore, the position advanced by Thrower is not novel. Similar arguments have been considered and rejected by the courts of this state on numerous occasions. In 2008, the Third District published its opinion in *People v. Monjaras*, *supra*, as a response to the recurrence of such contentions on appeal and "to say in no uncertain terms that a moribund claim like that raised by [the appellant] has breathed its last breath." (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1435.)

The *Monjaras* defendant accosted a woman in a parking lot and demanded she give him her purse. He then pulled up his shirt and displayed the handle of a pistol tucked into his waistband. A jury convicted the defendant of robbery and returned a true finding on a firearm enhancement under section 12022.53. (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1434.) The defendant appealed, "[p]ointing out that the victim could not say whether the pistol in [his] waistband was a gun or a toy, and making the dubious assertion that he 'did not undertake any behavior suggesting that he would fire the weapon.'" (*Id*. at p. 1435.) The defendant likewise argued that the firearm enhancement "was sustained merely on conjecture about the nature of the alleged weapon." (*Ibid.*)

In rejecting the defendant's arguments, the appellate court noted that "when faced with what appears to be a gun, displayed with an explicit or implicit threat to use it, few victims have the composure and opportunity to closely examine the object; and in any event, victims often lack expertise to tell whether it is a real firearm or an imitation." (*Monjaras*, *supra*, at p. 1436.) The holding of the case is summarized in its final paragraph: "[W]hen as here a defendant commits a robbery by displaying an object that

looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm within the meaning of section 12022.53, subdivision (b). In other words, the victim's inability to say conclusively that the gun was real … does not create a reasonable doubt, as a matter of law, that the gun was a firearm." (*Id*. at pp. 1437-1438, fn. omitted.)

Thrower devotes thirteen pages of his opening brief to arguments challenging the sufficiency of the evidence before finally acknowledging that *Monjaras* is controlling precedent. This is followed by another twelve pages of discussion in which he contends *Monjaras* was wrongly decided and asks us to fashion a new standard of proof for firearm enhancements. We decline the invitation.

The *Monjaras* opinion rests upon the sound policy that criminals should not benefit from their own destruction or concealment of evidence. Its holding is applicable in cases where a defendant has impeded the prosecution's ability to present relevant evidence by hiding, destroying or otherwise disposing of an object used during the commission of a crime. (See *Monjaras, supra,* at p. 1436 [noting "the object itself is usually not recovered by investigating officers"].) Here, Thrower discarded his gun while the police were in hot pursuit. If the gun was a fake, he would have been better served by retaining it. Thrower chose to eliminate the evidence, thereby accepting the risk of a firearm enhancement based upon the testimony of his victim and other eyewitnesses. Their testimony, considered in the context of the surrounding circumstances, constitutes substantial evidence in support of the jury's verdict.

## II. No Basis for Reversal on Grounds of Prosecutorial Misconduct

It is prosecutorial misconduct to misstate the applicable law during argument to the jury. (*People v. Huggins* (2006) 38 Cal.4th 175, 253, fn. 21; *People v. Otero* (2012) 210 Cal.App.4th 865, 870.) Thrower contends misconduct occurred during the rebuttal portion of closing argument when certain testimony was characterized as direct evidence

rather than circumstantial evidence. The prosecution stated, in pertinent part: "It's important to know that there was direct evidence that a firearm was used because two eyewitnesses saw the firearm being used. That's direct evidence. They didn't see bullets on the ground afterwards. They saw the firearm itself. That's direct evidence … that it's a firearm."

Defense counsel objected on grounds the prosecution had misstated the law. The trial court overruled the objection without comment. On appeal, Thrower claims "[b]y telling the jury that the circumstantial evidence instruction did not apply to the firearm enhancement, the prosecution lowered its burden of proof and deprived [him] of his Fourteenth Amendment due process right to a fair trial as to the firearm enhancements."

Thrower's arguments are based on an academic distinction. "When an inference needs to be drawn from the evidence to prove a fact, we call this circumstantial evidence as opposed to direct evidence. Thus, direct evidence is evidence 'that directly proves a fact, without an inference or presumption, and which in itself, if true, conclusively establishes that fact." (*Ajaxo, Inc. v. E\*Trade Group, Inc*. (2005) 135 Cal.App.4th 21, 50, quoting Evid. Code, § 410.)

The eyewitness testimony of Mr. Barnier and Ms. Garcia satisfies the definition of direct evidence with respect to Thrower's use of the object he displayed during the robbery. However, according to the analysis in *Monjaras,* the same testimony is considered circumstantial evidence as to the question of whether the object was a firearm as opposed to a replica. (*Monjaras*, *supra*, 164 Cal.App.4th at pp. 1435-1436.) We need not address the issue further because a reversal is unwarranted unless the alleged prosecutorial misconduct was prejudicial, i.e., unless it is reasonably probable the jury would have reached a result more favorable to Thrower if the misconduct had not occurred. (*People v. Partida* (2005) 37 Cal.4th 428, 439.) The required showing cannot be made.

The trial court orally instructed the jury prior to closing arguments. The instructions recited the language of CALCRIM Nos. 220, 223, and 224 with regard to the concept of reasonable doubt; the definitions of direct and circumstantial evidence; and application of those principles to the matters at issue. The court admonished the jury with the following language from CALCRIM No. 200: "You must follow the law as I explain it to you even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." The jury received the same instructions and admonishment in written form at the conclusion of closing arguments.

Insofar as the prosecution's arguments misstated the definitions of direct and circumstantial evidence, or the applicability of those concepts to the issues in dispute, the trial court provided the jury with correct statements of the law in its instructions. The jury was further told to defer to the trial court's instructions over any conflicting statements by counsel. Although Thrower complains that the court improperly overruled defense counsel's objection, ruling on an objection is not synonymous with giving an instruction. The former is materially different from the latter.

Jurors are presumed to be intelligent persons "capable of understanding and correlating all jury instructions which are given." (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111, internal quotations omitted.) In the absence of an affirmative showing to the contrary, which Thrower has failed to make, we must presume the jury followed the trial court's instructions and disregarded any incorrect statements of law by counsel that conflicted with those instructions. (*Ibid*; see also, *Weeks v. Angelone* (2000) 528 U.S. 225, 234 ["A jury is presumed to follow its instructions."].) This leads us to conclude that no prejudicial error occurred.

Even if we were to disregard these presumptions, it is an untenable leap of reasoning for Thrower to argue the burden of proof was somehow "lowered" with regard to the firearm enhancement allegations. Regardless of how the evidence was

9.

characterized, the instructions conveyed the need to establish each element beyond a reasonable doubt. (See *People v. Tate* (2010) 49 Cal.4th 635, 696 ["[W]e consider the instructions as a whole to determine whether there is a reasonable likelihood the jury was misled."].) This included CALCRIM No. 3146, which is tailored to sections 12022.5 and 12022.53, and identifies reasonable doubt as the applicable burden of proof. The prosecution's attempt to differentiate between direct and circumstantial evidence did not undermine the reasonable doubt standard. (See *People v. Livingston* (2012) 53 Cal.4th 1145, 1166.)

For the reasons stated above, we find no basis for reversal on grounds of prosecutorial misconduct. If misconduct occurred by way of a misstatement of law during closing argument, prejudice did not occur as a result.

## DISPOSITION

The judgment is affirmed.


_____
Gomes, Acting P.J.

WE CONCUR:


_____
Poochigian, J.


_____
Detjen, J.

10.