Filed 8/23/16  P. v. Valentin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C079430 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F05644) |
| v. | |
| SAMUEL EARL VALENTIN, | |
| Defendant and Appellant. | |

Defendant Samuel Earl Valentin challenges his conviction by jury of being a felon in possession of a firearm.  (Pen. Code, § 29800, subd. (a)(1); unless otherwise set forth, statutory references are to the Penal Code.)  He contends there was insufficient evidence he possessed a real gun.  Defendant also contends the trial court erred by imposing attorney's fees without holding a hearing to determine defendant's ability to pay.  (§ 987.8.)  We reverse and remand the attorney's fees order but otherwise affirm the judgment.

1

FACTS AND PROCEEDINGS

Just before 8:30 p.m. on August 29, 2013, Jesse Mejia walked into the store of a local gas station and saw defendant and a second man standing at the cash register. Mejia recognized defendant as someone he had seen about five times driving too fast around the neighborhood. Mejia saw defendant holding a shiny revolver in his hand. Defendant flashed the gun and said, "I keep mines with me." Although Mejia was unfamiliar with guns and would not know if a gun were real, he believed it was real and was scared. After a few seconds, defendant put the gun away into his waistband. Defendant and his companion left the store, returned to the gas pumps, and began interacting with a group of individuals at the pumps.

Mejia completed his purchases and returned to his car parked in front of the store, where his girlfriend and five children were waiting for him. Mejia's girlfriend said defendant had "mean mugged [the] whole car" and stared at her as he left the store, then Mejia told his girlfriend he had seen defendant holding a gun. They decided to call 911.

The police arrived within five minutes of the 911 call. They detained defendant, who matched Mejia's description of the man with the gun, and five other individuals who were with defendant. The police searched defendant, his vehicle (which was parked near the gas pumps), and two of defendant's associates, but did not find a gun. There was also a blue Porsche SUV parked near the gas pumps, unlocked and with the windows down. The Porsche belonged to Joshua Carter, who was not at the scene. Joshua's brother, Romaine Carter, was at the scene and was one of the six individuals police initially detained. During the entire hour and a half the police were there, no one retrieved or moved the Porsche.

The police interviewed the gas station store clerk, Kambez Nawabi, who was acting apprehensively and initially told them defendant had come into the store but nothing had happened. The police then phoned Mejia, who reiterated defendant had

2

shown a chrome revolver to the store clerk and suggested watching the surveillance video.

Concerned Nawabi had not been truthful during their first interview, the police returned to the store, asked to watch the video, and warned Nawabi to tell the truth. Nawabi told police that defendant, who was a regular customer and usually tipped Nawabi, had come into the store with a friend. Defendant and his friend wanted a cigar, but they didn't have any money, so defendant told Nawabi to "put it on [his] tab." Defendant then pulled a silver chrome revolver out of his pocket and showed it to Nawabi, saying "something along the lines of 'Look what I have here.' " Nawabi was ex-military and thought the gun was real because he saw the rounds of ammunition in the revolver. Defendant laughed and put the gun away, and Nawabi gave defendant a cigar. Defendant left the store, and Nawabi saw some members of defendant's group of friends had fled the gas station when the police first arrived.

Although Nawabi told police he did not feel as though he was being robbed, he was worried defendant and his friends would "come back and get him" if they thought Nawabi called police or was involved. While police were still at the gas station completing paperwork the night of the incident, one of the individuals associating with defendant at the gas pumps entered the store and told Nawabi they knew Nawabi had contacted the police. In addition, about a week after the incident, a regular customer named "Sam" (defendant's name is Samuel) told Nawabi he had been arrested and asked if Nawabi had contacted police. Nawabi denied calling, and said he did not know who did so. Nawabi was still working at the gas station at the time of trial.

Before leaving the gas station, a police officer watched the surveillance video with Nawabi. The video was poor quality, but the officer saw defendant reach for his left pocket and pull out a metal or chrome-colored item. Although the officer was unsure if the item was a gun, it was the shape of a revolver and defendant held it the way one would hold a gun.

3

Nawabi's trial testimony differed significantly from what he told police. Although his memory was better the night of the event and he did not lie to the police about anything he saw that night, Nawabi testified he never saw a gun and could not remember what happened that night or what he told police. Nawabi was not scared of defendant and never had a problem with him and the police pressured him to say there was a gun. The court found Nawabi to be a hostile witness because he was being evasive and changing his testimony.

A jury found defendant guilty of being a felon in possession of a firearm. (§ 29800, subd. (a)(1).) A jury also found true defendant had a prior strike. (§§ 667, subds. (b)-(i) & 1170.12.) The court sentenced defendant to four years' imprisonment in state prison and imposed $3,175 in attorney's fees for the public defender's office. Defendant objected to the attorney's fees, claiming he was indigent and had two children. The April 2015 probation report did not indicate any income or assets for defendant, stating defendant had never been employed and did not receive government assistance. The trial court overruled the objection, noting defendant could apply to the Department of Revenue Recovery "for a payment plan for their assessment of [his] ability to pay, [he] still ha[s] a right to do that."

## DISCUSSION

### I

#### *Sufficiency of the Evidence*

Defendant argues no substantial evidence supported the finding he was holding an actual gun. According to defendant, no firearm was found, and neither Mejia nor the officer who reviewed the surveillance video was able to say whether the gun was real or fake. In addition, contends defendant, Nawabi testified there was no gun.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to

4

determine whether it contains substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 701.) A reviewing court does not reweigh evidence or reevaluate a witness's credibility. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

The crime of being a felon in possession of a firearm requires "conviction of a felony and ownership or knowing possession, custody, or control of a firearm." (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1029 [citing the predecessor statute, former § 12021, subd. (a)(1)]; see also § 29800, subd. (a)(1).) The parties stipulated defendant was previously convicted of a felony, so the issue was whether defendant possessed a real gun. The jury instructions appropriately clarified the gun had to be designed to shoot and appear capable of shooting, and that a replica did not qualify as a firearm. (See *People v. Jackson* (1979) 92 Cal.App.3d 899, 903; *People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435.)

There was ample evidence defendant had a real gun. Mejia testified and told police he believed defendant had a real gun. Nawabi, who was ex-military, told police he thought the gun was real. His opinion was grounded on his observation of rounds in the revolver cylinder. In addition, the officer who watched the surveillance video described defendant holding a revolver-shaped object, in a manner consistent with how one would hold a gun.

In addition, a jury could reasonably infer the gun was real given defendant's behavior. (See, e.g., *People v. Rodriguez* (1999) 20 Cal.4th 1, 10–13, ["California courts

5

have often held that a defendant's statements and behavior while making an armed threat against a victim may warrant a jury's finding the weapon was loaded"]; *People v. Monjaras, supra*, 164 Cal.App.4th at pp. 1435–1438 [reasonable to infer gun displayed during robbery was not a toy]; *People v. Miceli* (2002) 104 Cal.App.4th 256, 268–269.) Although Nawabi said he did not think he was being robbed when defendant asked for a cigar to be put on his "tab" and then showed him a gun, a jury could reasonably infer otherwise. A jury could also reasonably infer from the abandoned Porsche that someone associated with defendant fled the scene with the firearm.

We note that, to the extent the sufficiency of the evidence depended on Nawabi's prior statements to the police that were inconsistent with his testimony at trial, such prior inconsistent statements can be used by the jury as evidence that the information in the earlier statement is true. (See generally, CALCRIM No. 318 and the Bench Notes and Authorities, thereto.)

The evidence was sufficient to justify the jury's conviction.

## II

### *Attorney Fees*

Defendant argues the trial court erred when it imposed $3,175 in attorney's fees without holding a hearing regarding defendant's ability to pay, and asks this court to strike the award. The People concede the error but contend the matter should be remanded for the trial court to hold a hearing.

Section 987.8 authorizes the court to order criminal defendants to pay all or part of the cost of their appointed counsel after the trial court determines the defendant has a present ability to pay. In determining this ability to pay, the court may consider both the defendant's present financial position and the defendant's reasonably discernible future financial position, limited to six months in the future. (§ 987.8, subd. (g)(2)(B).) "Unless the court finds unusual circumstances, a defendant sentenced to state prison shall be

6

determined not to have a reasonably discernible future financial ability to reimburse the costs of his or her defense." (*Ibid.*) Thus, the court must make an express finding of unusual circumstances before ordering a state prisoner such as defendant to reimburse his or her attorney. (*People v. Lopez* (2005) 129 Cal.App.4th 1508, 1537.)

Because the trial court failed to make the required determination, there is no evidence defendant was at the time or would be in the future in a financial position to pay the sum imposed. The $3,175 attorney's fees order is invalid and we will vacate it and remand the matter for a new hearing. (See, e.g., *People v. Lopez, supra*, 213 Cal.App.4th at p. 1537.)

### DISPOSITION

The $3,175 attorney's fees order is reversed and remanded. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. In its discretion, the trial court may hold a noticed hearing pursuant to Penal Code section 987.8 if the court chooses to consider reimposing the attorney's fees. In all other respects, the judgment is affirmed.


           HULL           , Acting P. J.


We concur:


      ROBIE         , J.


      MURRAY      , J.

7