Filed 6/21/22  P. v. Brown CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CEDRICK RAY BROWN,<br><br>    Defendant and Appellant. | F081970<br><br>(Kern Super. Ct. No. SC028661A)<br><br>**OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Rebecca P. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Chung Mi Choi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Hill, P. J., Peña, J., DeSantos, J.

**<u>INTRODUCTION</u>**

In 1985, appellant Cedrick Ray Brown was convicted of first degree murder and sentenced to 25 years to life.  In 1987, this court affirmed the judgment on direct appeal.

In 2020, appellant filed a petition for resentencing pursuant to Penal Code[1] section 1170.95, supported by his sworn declaration that he was not the actual killer, he was convicted under the felony-murder rule and/or the natural and probable consequences doctrine, and he could not be now convicted of first or second degree murder because of the amendments to sections 188 and 189.  The superior court denied the petition.

On appeal, appellant argues his petition and supporting declaration satisfied the prima facie showing, the superior court failed to follow the procedural requirements of section 1170.95, and the matter should be remanded for the superior court to issue an order to show cause (OSC).

We find the court's statutory errors under section 1170.95 were not prejudicial because the record of conviction shows appellant was the actual killer, and we affirm the denial of the petition.

**<u>FACTS</u>[2]**

While driving to mass on August 19, 1984, Ynez Terrazas saw an elderly woman and a black male struggling over a purse.  When the black male, whom Terrazas

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] As will be explained in the procedural history below, we granted appellant's motion to augment the instant record with the surviving records from his 1985 jury trial; it was subsequently determined the court reporter's notes for the reporter's transcripts of his jury trial no longer exist.

We now grant the People's unopposed request to take judicial notice of this court's nonpublished opinion that affirmed appellant's convictions and sentence on direct appeal, *People v. Brown*, June 16, 1987, F005832.  We also grant appellant's unopposed request to take judicial notice of the jury instructions given at appellant's trial.

The following facts are taken from this court's opinion on direct appeal.  We recite the facts to provide context for the court's denial of his petition and the parties'

identified as being appellant, gained control of the purse, he ran off while the elderly woman fell. When Terrazas stopped to aid the woman, later identified as Helen Rupp, she noticed the woman had blood on her arm and was not moving. On cross-examination, Terrazas admitted never seeing the black male push Ms. Rupp. However, on redirect, Terrazas stated Ms. Rupp did not appear to relinquish control of the purse voluntarily.

David Barragan, another witness who was working on a nearby roof, saw a man take a purse away from a woman. Although he was too far away to make a positive identification of appellant, Barragan did notice that the woman would not give up the purse, and the man had to pull it away. When the man got the purse, Barragan saw the woman fall in the same motion. Barragan noted that the man pulled at the purse more than once.

Ray Vaughn, who was staying at his brother's apartment, saw appellant at the apartment that same morning. Appellant looked as if he was carrying a "bag." Even after being refused permission, appellant went into the bathroom. Through a crack in the door, Vaughn saw appellant going through the purse. Appellant was arrested soon after at this apartment complex.

Ms. Rupp, the stipulated victim in this case, was a 77-year-old woman who was very active before breaking her hip in the struggle for her purse. After the fall, Ms. Rupp was restricted to the use of a walker.

Ms. Rupp, who not only broke her hip, but also fractured a shoulder, had surgery to replace the hip on August 22, 1984. After being discharged, Ms. Rupp returned to the hospital on September suffering from pneumonia. Ms. Rupp was released on September 24, 1984, and she died in her home on October 18, 1984.

---

arguments in this appeal. As will be explained below, we will not rely on the factual summary to resolve the issues presented in this appeal. (See § 1170.95, subd. (d)(3).)

Armand Dollinger, the pathologist who performed the autopsy on Ms. Rupp, felt the immediate cause of death was acute heart failure due to coronary artery disease. Dollinger found a blood clot of recent origin in the pulmonary artery. It was Dollinger's opinion the clot came from the area of the left hip, which had been injured, since clots often develop in areas of trauma. Dollinger concluded that the blood clot was a contributing cause of death because it had the effect of lowering the blood flow to the heart. Ms. Rupp's orthopedic surgeon concurred in the assessment that a blood clot could have formed in the area of the hip, causing Ms. Rupp's death.

A substantial portion of the evidence on defense and during cross-examination of the prosecution witnesses dealt with the levels and types of drugs found in Ms. Rupp's system at the time of her death. Ms. Rupp had been prescribed Elavil for depression resulting from the injuries she received to her hip and shoulder. The active ingredient in Elavil is amitriptyline and through a normal metabolic process in the body, amitriptyline is changed into nortriptyline. A test of Ms. Rupp's blood revealed levels of 190 nanograms for amitriptyline and 770 nanograms for nortriptyline.

Dr. John Caldwell, a clinical pharmacist, testified that a combined total of 900 nanograms in the blood is considered toxic. However, according to Dr. Caldwell, to be considered lethal, the levels would have to approach 1500 to 2000 nanograms.

Ron Smith, a toxicologist, stated that while people have died of lower levels than those found in Ms. Rupp, most overdoses are the result of much higher levels.

Dr. Robert Bucklin, a pathologist testifying for the defense, felt that since Ms. Rupp had suffered no symptoms indicating the presence of a two-week-old clot, it was unlikely that it caused her death. Bucklin felt the autopsy presented no clear cause of death. In Dr. Bucklin's opinion, the high levels of amitriptyline and nortriptyline were the primary causes of death. (*People v. Brown*, *supra*, F005832, at pp. 2–5.)

4.

## PROCEDURAL BACKGROUND[3]

Following a preliminary hearing, an information was filed on September 19, 1984, charging appellant with one count of robbery (§ 211). The information further alleged that while committing the robbery, appellant inflicted great bodily injury (§ 12022.7) and inflicted great bodily injury on a person over the age of 60 (§ 1203.09). (*People v. Brown*, June 16, 1987, F005832, at pp. 1–2.)

On October 18, 1984, Ms. Rupp died. (*People v. Brown*, *supra*, F005832, at p. 3.)

On November 7, 1984, the Kern County Grand Jury handed down an indictment accusing appellant of committing one count of murder (§ 187) and one count of robbery. The indictment was based on the same facts relied upon in the information. (*People v. Brown*, *supra*, F005832, at p. 2.)

By way of motion, the indictment and information were consolidated on November 9, 1984. On this same day, appellant's motion for a post-indictment preliminary examination also was granted. This preliminary examination was held on January 28 and 29, 1985, and he was held to answer.[4] (*People v. Brown*, *supra*, F005832, at p. 2.)

On February 8, 1985, a new information was filed that charged appellant with count 1, murder of Ms. Rupp, on or about and between August 19 and October 18, 1984

---

[3] The following procedural background is taken from the instant appellate record and the matters of which we have taken judicial notice, including this court's opinion in appellant's direct appeal and the instructions given at his jury trial.

[4] While the reporter's transcripts from appellant's jury trial no longer exists, the instant record was augmented to include the transcripts for the January 28 and 29, 1985, preliminary examination, where three witnesses testified as percipient observers of the robbery; one witness testified about seeing appellant with a purse; an officer testified about finding the victim's purse in the apartment where appellant was located; and Dr. Dollinger, Dr. Tivnon, and Dr. Sandridge testified about the victim's injuries, existing illnesses, and cause of death; and the parties extensively argued the causation issues; and the court held appellant to answer. We have not relied on these records to resolve the issues in this appeal.

(§ 187); and count 2, robbery of Ms. Rupp on or about August 19, 1984 (§ 211) with the section 1203.09 great bodily injury allegation. (*People v. Brown*, *supra*, F005832, at p. 2.) On February 28, 1985, the two informations and one indictment ultimately were consolidated. (*Ibid*.)

## APPELLANT'S JURY TRIAL

On April 29, 1985, appellant's jury trial began on count 1, murder, and count 2, robbery with the section 1203.09 great bodily injury allegation.

**The Jury Instructions**

The jury received the following instructions as to the charged offenses. CALJIC No. 9.10 defined the elements of robbery. The court gave a special instruction on the section 1203.09 great bodily injury allegation attached to the robbery charge:

> "It is charged in the information, that in the commission of the offense therein described, the defendant, Cedric[k] Brown, did *personally inflict* great bodily injury upon Helen Rupp, a person 60 years or older. [¶] If you find the defendant guilty of robbery, it then will be your duty to determine, (1) whether at the time of the commission of the offense, Helen Rupp, was a person 60 years or older, and (2) *that in the commission of the robbery*, *defendant inflicted great bodily injury upon such person*. The burden is on the People to prove this beyond a reasonable doubt. [¶] You will include a finding on that question in your verdict, using a form that will be supplied for that purpose." (Italics added.)

The jury was further instructed that "great bodily injury" as used in the special allegation attached to count 2 meant "a significant or substantial physical injury." (*Id*. at p. 30.)

CALJIC No. 8.10 defined the charged offense of murder as an "unlawful killing of a human being which occurs during the commission or attempt to commit a felony inherently dangerous to human life," and the elements were that a human being was killed, the killing was unlawful, and "the killing occurred during the commission or attempt to commit a felony inherently dangerous to human life. Robbery is a felony inherently dangerous to human life."

6.

CALJIC No. 8.21 defined first degree felony murder as "[a]n unlawful killing of a human being, whether intentional, unintentional, or accidental, which occurs as a result of the commission or attempt to commit the crime of robbery, and where there was in the mind of the perpetrator the specific intent to commit such crime," and the specific intent to commit robbery must be proved beyond a reasonable doubt.

The jury received four instructions on causation for murder. CALJIC No. 8.55 defined proximate cause for murder:

> "To constitute murder, there must be, in addition to the death of a human being, an unlawful act which was a proximate cause of that death.
>
> "The proximate cause of a death is a cause which, in natural and continance [*sic*] sequence, produces the death and without which the death would not have occurred.
>
> "There may be more than one proximate cause of a death. When the conduct of two or more persons contributes concurrently as proximate causes of a death, the conduct of each is a proximate cause of the death regardless of the extent to which each contributes to the death. A cause is concurrent if it was operative at the moment of death and acted with another cause to produce the death." (*People v. Brown*, *supra*, F005832, at p. 11.)

CALJIC No. 8.56 stated that it was not a defense to a criminal charge that "the deceased or some other person was guilty of negligence which was a contributory cause of the death involved in the case." (*People v. Brown*, *supra*, F005832, at p. 11.)

CALJIC No. 8.57 addressed medical and intervening causes:

> "Where the original injury is a proximate cause of the death, the fact that the immediate cause of death was the medical or surgical treatment administered or that such treatment was a factor contributing to the cause of death will not relieve the person who inflicted the original injury from responsibility.
>
> "Where, however, the original injury is not a proximate cause of the death, and the death was proximately caused by such medical or surgical treatment or some other cause, then the defendant is not guilty of an unlawful homicide." (*People v. Brown*, *supra*, F005832, at p. 12.)

7.

CALJIC No. 8.58 addressed an unlawful injury accelerating death:

"If a person unlawfully inflicts upon another person a physical injury which is a proximate cause of the latter's death, such conduct constitutes an unlawful homicide even though the injury inflicted was not the only cause of the death, and although the person thus injured had been already weakened by disease, injury, physical condition, or other cause, and although it is probable that a person in sound physical condition thus injured would not have died from the injury and although it is probable that the injury only hastened the death of the injured person and that he would have died soon thereafter from another cause or causes." (*People v. Brown*, *supra*, F005832, at p. 12.)

The jury was not instructed on principals or accomplices, direct or indirect aiding and abetting, the natural and probable consequences doctrine, target or nontarget offenses, or any other felonies aside from the charged crimes of murder and robbery.

**Convictions and Sentence**

On May 16, 1985, the jury convicted appellant of count 1, first degree murder and count 2, robbery, and found true the section 1203.09 special allegation, that appellant personally inflicted great injury on a person more than 60 years old in the commission of the robbery.

On June 13, 1985, the court held the sentencing hearing and sentenced appellant to 25 years to life for murder. As to count 2, robbery, it imposed the upper term of five years and stayed it pursuant to section 654.

<u>**APPELLANT'S DIRECT APPEAL**</u>

On June 16, 1987, this court filed the nonpublished opinion in appellant's direct appeal that affirmed the judgment. (*People v. Brown*, *supra*, F005832.)

First, appellant argued his murder conviction had to be reversed for insufficient evidence that his conduct was "the cause" of Ms. Rupp's death because "the injuries received by [her] during the robbery were nonfatal and not a foreseeable cause of death," and instead her death "was an unforeseeable consequence of the robbery." (*People v. Brown*, *supra*, F005832, at p. 5.) This court disagreed and held appellant's conviction for

8.

first degree murder was supported by substantial evidence, and reviewed the testimony from the doctors:

> "[T]here was evidence offered by two doctors that a blood clot found in Rupp's pulmonary artery could have directly caused her death. The clot, both doctors felt, originated in the area of the hip where Rupp had been injured. In fact, Dr. Tivnon, Rupp's orthopedic surgeon, stated that following an injury such as that suffered by Rupp, the patient often is bedridden. When a patient is bedridden, doctors generally are not concerned with the actual injury, but with the possibility that death could result from blood clots, pneumonia, or heart problems. According to Dr. Tivnon, these problems are traceable to the original injury.
>
> "Dr. Dollinger was of the opinion the blood clot came from the area of the left hip where there had been the recent injury. Dr. Dollinger noted he did not find any other masses in the veins of the legs, which are often a source of clots. Moreover, Dollinger found Rupp was suffering from various types of arterial disease consistent with those found in people her age. Because the blood clot lowered the flow of blood to the heart, Dr. Dollinger concluded the clot was a contributing cause of death." (*People v. Brown*, *supra*, F005832, at p. 6.)

Appellant argued there was too much uncertainty about the origin of the blood clot and its contribution to the cause of death, there was "considerable" evidence Ms. Rupp died from a toxic overdose, and the potential drug overdose and reduced flow of blood due to the condition of her heart "were not sufficiently foreseeable forces contributing to Rupp's death." (*People v. Brown*, *supra*, F005832, at p. 7.) We explained that appellant's arguments addressed whether his act was the proximate cause of death. (*Ibid*.)

> "Rupp was a 77-year-old woman with a level of heart disease common in people her age. Also, because of her age, she was more susceptible to fractures. Although a blood clot developing in the area of the fracture and moving to the pulmonary artery thereby causing a decrease in the flow of blood to the heart, may not have caused death in a younger or healthier individual, the fact it caused death here should not be considered an unforeseeable consequence. [Citation.] Rupp's preexisting medical problems were not the <u>only</u> substantial factor bringing about her death. Appellant must take his victim as he found her. The evidence designating

9.

the blood clot as the cause of death and linking it to the original fracture provides substantial evidence supporting the verdict." (*People v. Brown*, *supra*, F005832, at pp. 7–8.)

Appellant's next argument was he could not be held responsible under the felony murder rule when a death did not "result purely from the physical injuries inflicted during the robbery." (*People v. Brown*, *supra*, F005832, at p. 8.) "Appellant notes the jury was presented with two theories regarding the cause of Rupp's death. One theory argued Rupp died from when a blood clot originating from the hip injury restricted the flow of blood to the heart. The second theory was that Rupp died from a lethal dose of Elavil prescribed for depression. Appellant believes if Rupp died from an adverse reaction to Elavil, the chain of causation was broken by this intervening act…." (*People v. Brown*, *supra*, F005832, at p. 8.)

We held that while the evidence was "in conflict over whether [Ms.] Rupp died from a blood clot originating from the area of the hip fracture or from a toxic reaction to Elavil," appellant's argument was meritless. (*People v. Brown*, *supra*, F005832, at p. 8.) We again explained that appellant's arguments addressed proximate causation, and an injury inflicted by a defendant " 'need not be proved to be the direct or sole cause of death, so long as it started a chain of causation resulting in death or was otherwise a substantial contributing cause of death.' [Citation.] CALJIC defines proximate cause as 'a cause which, in natural and continuous sequence, produces the death, and without which the death would not have occurred.' " (*Id.* at p. 9.)

In reaching this conclusion, we relied on *People v. Stamp* (1969) 2 Cal.App.3d 203 (*Stamp*), where an armed robbery victim suffered a fatal heart attack 15 to 20 minutes after the robbery. *Stamp* affirmed the defendant's conviction and held the felony-murder rule was not limited to deaths which are foreseeable. (*Id.* at p. 210.) We quoted *Stamp* as follows:

> "As long as the homicide is the direct causal relationship of the robbery the felony-murder rule applies whether or not the death was a natural or

10.

probable consequence of the robbery. So long as a victim's predisposing physical condition, regardless of its cause, is not the <u>only</u> substantial factor bringing about his death, that condition, and the robber's ignorance of it, in no way destroys the robber's criminal responsible for the death." (*Stamp, supra*, 2 Cal.App.3d at p. 210.)

We explained that *Stamp* affirmed the first degree felony-murder conviction in that case because "the defendant takes his victim as he finds him," and "the unlawful acts of the defendant set in motion a 'natural and continuous sequence' resulting in death. [Citation.] Therefore, for an intervening cause to relieve a defendant of liability, it must act independently of this chain of causation." (*People v. Brown*, *supra*, F005832, at pp. 10–11.)

> "Appellant, in raising the issue, essentially asks this court to conclude that as a matter of law he could not be legally responsible for Rupp's death if the cause of death was an adverse reaction to Elavil. This is not a question that can be answered as a matter of law. Causation is a question of fact. It is up to the trier of fact to determine whether death from a drug prescribed to deal with the effects of depression resulting from the physical injuries sustained in the crime is proximately related to the appellant's initial unlawful act." (*People v. Brown*, *supra*, F005832, at p. 11.)

We noted the jury was correctly instructed on causation with the instructions set forth above. We held that since the jury was correctly instructed, "if the jury determined Elavil caused [Ms.] Rupp's death, a proper framework was established for it to evaluate whether the prescription for Elavil was part of the natural and continuous sequence initiated by the original injury to [Ms.] Rupp, which led to her death." (*People v. Brown*, *supra*, F005832, at p. 12.) We further noted both parties addressed the proximate cause issue in their closing arguments. (*Id*. at pp. 13–14.) As a result, "the relationship between causation and Elavil was fully presented and argued to the jury. The jury was also instructed properly on the issue of proximate cause. [B]ecause the issue of causation is one of fact rather than one of law, substantial evidence supports the proposition that the jury reached the proper conclusion on this issue." (*Id.* at p. 14.) We concluded: "If a jury determines death from an adverse reaction to a drug prescribed for depression is not

11.

a superseding cause of death relieving a defendant of liability, then the homicide is related directly to the robbery and the felony-murder rule must be applied." (*Id.* at p. 15.)

As to appellant's other issues, we held the court did not improperly refuse to instruct on lesser included offenses of grand theft and involuntary manslaughter, rejected his claims of prosecutorial misconduct, and conclude his sentence of 25 years to life did not constitute cruel and unusual punishment. (*People v. Brown*, *supra*, F005832, at pp. 15–25.) In rejecting his sentencing claim, we held: "Appellant committed a robbery when he stole [Ms.] Rupp's purse. The jury found specifically that appellant used force when it found true the allegation he intentionally inflicted great bodily injury on a person over the age of 60 years. Appellant committed the crime of robbery intentionally. Although appellant may not have expected to cause [Ms.] Rupp serious injury, when considering her age and the potential complications common in elderly patients with fractures, serious injury and death were not totally unforeseeable. Furthermore, robbery is considered generally as a crime posing a potentially serious risk of danger." (*Id.* at p. 24.)

## APPELLANT'S SECTION 1170.95 PETITION

On August 12, 2020, appellant, represented by the public defender, filed a petition for resentencing under section 1170.95. The petition was supported by appellant's declaration, signed under penalty of perjury, that he was convicted of first degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; he could not now be convicted of first or second degree murder under the amended versions to sections 188 and 189 because he was not the actual killer, he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of first degree murder, and he was not a major participant and did not act with reckless indifference to life; and requested appointment of counsel.

On August 19, 2020, the court held a hearing and directed the People to file a response. Defense counsel asked about the court's procedure to rule upon the petition.

12.

The court stated the "first ruling" would be "in chambers" as to "whether or not there's been a prima facie case shown that there should be a hearing, and an OSC should issue. That's all done in chambers by the Court."

**The People's Opposition**

On September 18, 2020, the People filed opposition that contained a procedural and factual basis and stated the background was "taken directly" from this court's opinion since that opinion was part of the record of conviction. However, a copy of the opinion was not attached.

The People argued appellant's petition failed to make a prima facie showing for relief because the record of conviction showed he was the actual killer, and his petition should be denied without issuing an OSC.

**Appellant's Response**

On October 20, 2020, appellant filed a response, and argued section 1170.95 required the trial court to accept his declaration as true, his declaration stated he was not the actual killer, the record from his trial was incomplete, and the court had to find he made a prima facie case for relief and issue an OSC.

**The Court's Denial of the Petition**

On October 27, 2020, the court filed a minute order that stated it had reviewed and consider the People's opposition and appellant's response. It denied appellant's petition for resentencing without holding a hearing or stating reasons.

## APPELLATE MOTIONS

On October 30, 2020, appellant filed a timely notice of appeal of the court's denied of his section 1170.95 petition.

On January 27, 2021, this court granted appellant's motion to augment the appellate record with the record from his jury trial. On March 3, 2021, the augmented record was filed with this court, consisting of appellant's preliminary hearing, pleadings, and minute orders from his jury trial. On the same date, the supervisor of court reporters

filed a declaration stating the dates for appellant's 1985 jury trial were past the statutory requirements to maintain the records.

On June 24, 2021, the People filed a request for this court to take judicial notice of our opinion that affirmed appellant's convictions and sentence on direct appeal, with a copy of the opinion attached as an exhibit. On September 15, 2021, appellant filed a request for this court to take judicial notice of the jury instructions given at appellant's trial, with copies of the instructions attached as an exhibit.

This court deferred ruling on both judicial notice requests pending review of the merits, granted the opposing parties leave to file an informal response to each request, and stated the failure to file a response could be deemed as agreement for the request to be granted. No responses or oppositions were filed. As noted above, we grant both these requests for judicial notice.

On February 16, 2022, after briefing was completed in this appeal, this court ordered the parties to file supplemental briefs about the effect of recent amendments to section 1170.95 on the issues raised in this case.

## DISCUSSION

### I.  Section 1170.95

We begin with the provisions of sections 188, 189 and 1170.95, subsequent amendments, and the interpretations of the statutes.

#### A.  *Senate Bill No. 1437*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) became effective on January 1, 2019, and amended " 'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

14.

"Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability."[5] (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

"In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra*, 11 Cal.5th at p. 959.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' [Citation.] If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' " (*Lewis, supra*, 11 Cal.5th at pp. 959–960.)

"Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner

---

[5] As amended, section 189, subdivision (f) states an exception that allows "individuals to be convicted of felony murder even if they did not act with malice and do not fall in one of the three categories of section 189, subdivision (e), where the victim is a peace officer engaged in the course of his or her duties and the defendant knows (or reasonably should know) these facts." (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 99.)

has made 'a prima facie showing' for relief. [Citation.] [¶] If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not … previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' " (*Lewis, supra*, 11 Cal.5th at p. 960.)

**B.** *Lewis*

In *Lewis*, the court interpreted the provisions of section 1170.95 and held that petitioners "are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Lewis, supra*, 11 Cal.5th at p. 957, italics added in original.) " 'If the petitioner has requested counsel, the court *shall* appoint counsel to represent the petitioner.' " (*Id.* at p. 963, italics added in original.)

*Lewis* also held that "at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra,* 11 Cal.5th at p. 974.) When the court conducts the prima facie determination, section 1170.95, subdivision (b)(2) only permits screening out "noncomplying petitions, not petitions that lack substantive merit." (*Lewis,* at p. 968.)

*Lewis* further held that after appointing counsel, the trial court may rely on the record of conviction to determine whether the prima facie showing has been made in

order "to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Ibid.*)

" 'However, if the record, *including the court's own documents*, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971, italics added.)

"Appellate opinions … are generally considered to be part of the record of conviction. [Citation.] However, as we cautioned in [*People v. Woodell* (1998) 17 Cal.4th 448, 457], the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.] In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] As the People emphasize, the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis, supra*, 11 Cal.5th at p. 972.)

"[T]here is no categorical bar to consulting the record of conviction at the prima facie stage." (*Lewis, supra*, 11 Cal.5th at p. 972, fn. 6.) "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95,] subdivision (c)." (*Id.* at p. 972, fn. omitted.)

The prima facie determination is a question of law, and the court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law. (*Lewis, supra*, 11 Cal.5th at p. 966.)

*Lewis* announced a prejudicial error standard under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*), if the trial court failed to appoint counsel or violated the petitioner's statutory rights under section 1170.95, and the petitioner must "therefore 'demonstrate there is a reasonable probability that in the absence of the error he [or she] … would have obtained a more favorable result.' " (*Lewis, supra*, 11 Cal.5th at p. 974.)

Therefore, to demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974; *Watson, supra,* 46 Cal.2d at p. 836.)

## C.    *Senate Bill No. 775*

In October 2021, Senate Bill No. 775 was enacted and amended section 1170.95, effective on January 1, 2022 (2020–2021 Reg. Sess.) (Stats. 2021, ch. 551, § 1) (Senate Bill 775). As a result of the amendments, section 1170.95 clarified that "persons convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1170.95, subd. (a).)

The amendments also codified the holding in *Lewis* that "[u]pon receiving a petition in which the information required by this subdivision is set forth …, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (b)(3).) After the petition is filed, the People shall file a response and the petitioner may serve a reply. (*Id.* at subd. (c).)

18.

After the parties have the opportunity to submit briefs, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1170.95, subd. (c).) If the petitioner makes the prima facie showing, "the court shall issue an order to show cause." (*Ibid*.) If the court declines to issue an order to show cause, "it shall provide a statement fully setting forth its reasons for doing so." (*Ibid*.)

If an order to show cause is issued, "the court shall hold a hearing to determine" whether to vacate the petitioner's conviction, recall the sentence, and resentence petitioner. (§ 1170.95, subd. (d)(1).) At the hearing, the prosecution has the burden to prove beyond a reasonable doubt that petitioner is guilty of murder or attempted murder under the amended versions of sections 188 and 189. (§ 1170.95, subd. (d)(3).) "At the hearing to determine whether the petitioner is entitled to relief … [t]he admission of evidence in the hearing shall be governed by the Evidence Code, except that the court *may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion*. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Ibid*., as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022, italics added.)

In this case, the court summarily denied appellant's petition before *Lewis* was decided and section 1170.95 was amended by Senate Bill 775. However, the statutory amendments are applicable to his case since it is not yet final on appeal. (See, e.g.,

19.

*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 306–309; *People v. Vieira* (2005) 35 Cal.4th 264, 306; *People v. Porter* (2022) 73 Cal.App.5th 644, 652.)

With this background in mind, we turn to appellant's contentions.

## II.     The Court's Failure to Comply with Section 1170.95

Appellant argues the matter must be remanded because the court failed to comply with the requirements of section 1170.95 to conduct a hearing, issue a statement of reasons for denying the petition for failing to satisfy the prima facie showing, and may have improperly engaged in factfinding by relying on the factual statement contained in the People's opposition to his petition. Appellant further argues his petition and supporting declaration established the prima facie showing required by section 1170.95, the superior court should have issued an OSC, and its failure to do so constituted prejudicial error.

We first note that as to the procedural requirements of section 1170.95, appellant was represented by the public defender in the filing and review of his petition for resentencing. In addition, the court invited further briefing from the parties, the People filed opposition, and appellant filed a response.

However, the court did not conduct a hearing prior to addressing the prima facie finding and did not give a statement of reasons when it denied appellant's petition without issuing an OSC, as required by section 1170.95, subdivision (c). We further note that the People's opposition included a factual statement, apparently based on this court's direct appeal, and it cannot be determined whether the trial court made improper factual findings when it denied appellant's petition since the court did not give a statement of reasons.

To the extent the trial court violated section 1170.95 by denying appellant's petition without holding a hearing, failing to give a statement of reasons when it declined to issue an OSC, and possibly engaging in premature factfinding at the prima facie stage (§ 1170.95, subds. (c), (d)(3)), we may affirm the court's order if appellant was not

20.

prejudiced by the statutory errors. (*Lewis, supra*, 11 Cal.5th at pp. 972–974.) Appellant must show that absent the statutory errors, there is a reasonable probability he would have obtained a more favorable result. (*Ibid.*; *People v. Watson, supra*, 46 Cal.2d at p. 836.)

We now turn to appellant's claims of prejudicial error.

## III. Appellant Was Ineligible for Relief as a Matter of Law

Appellant contends the limited record that may be considered for the prima facie finding does not refute the allegations in his section 1170.95 petition and supporting declaration, that he was entitled to relief because he was convicted under the felony-murder rule, and he was not the actual killer. Appellant acknowledges that *Lewis* held this court's opinion from his direct appeal is part of the record of conviction, but argues the factual statement contained in that opinion cannot be relied upon to make factual findings that he is ineligible for relief as a matter of law, and the matter must be remanded for issuance of an OSC.

It is now settled that the opinion from a petitioner's direct appeal is part of the record of conviction that may be considered to determine whether the petitioner made a prima facie showing of resentencing eligibility. (*Lewis, supra*, 11 Cal.5th at p. 972.) As appellant also notes, however, the role of the appellate opinion is circumscribed, and the court may not engage in factfinding based on the appellate opinion at the prima facie stage. (*Id.* at pp. 971–972; § 1170.95, subd. (d)(3).)

While we have cited our prior opinion for the factual statement, we have done so only to provide context to the parties' arguments, and do not rely on this factual statement, or the facts stated in the probation report and preliminary hearing, to resolve the prima facie issue and whether the court's statutory errors were prejudicial.

The court may rely on procedural history to make the prima facie determination. This includes the jury instructions, which are part of the record of conviction, because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the

21.

record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion,' " which must wait to occur until after an OSC issues. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, disapproved on another ground in *Lewis, supra*, 11 Cal.5th 952.)

As we explain, we find the court's failure to comply with the requirements of section 1170.95 was not prejudicial because the procedural record shows appellant was ineligible for relief as a matter of law since he was charged and convicted as the actual killer.

### A. *Felony Murder and the Statutory Amendments*

"It is commonly understood that a defendant can be convicted of murder when he or she is the actual killer." (*People v. Cruz* (2020) 46 Cal.App.5th 740, 751.)

"A separate theory to support a murder conviction is the felony-murder rule. 'The felony-murder rule makes a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state. [Citation.] Under the felony-murder rule, ' "the requisite malice for a murder conviction" ' is imputed ' "to those who commit a homicide during the perpetration of a felony inherently dangerous to human life." ' [Citation.] Both the actual killer and the accomplice can be convicted of murder under the felony-murder rule." (*People v. Cruz, supra,* 46 Cal.App.5th at p. 752.)

As a result of Senate Bill 775's amendments to section 1170.95, "persons convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime …" may file a petition to have that conviction vacated if the petitioner "could not presently be convicted of murder … because of changes to Section 188 or 189…." (§ 1170.95, subd. (a)(e).)

The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined. (*People v.*

*Allison* (2020) 55 Cal.App.5th 449, 461.) As relevant to appellant's case, section 189 now states in relevant part that "[a] participant in the perpetration or attempted perpetration" of certain enumerated felonies, including robbery, "in which a death occurs is liable for murder only if one of the following is proven: [¶] … *The person was the actual killer.*" (§ 189, subd. (e)(1), italics added.) Thus, a petitioner is ineligible for resentencing, even if he was convicted under the felony-murder rule, if he was the actual killer. (§§ 188, subd. (a); 189, subd. (e); 1170.95, subd. (a)(3).)

"[T]he term 'actual killer' as used in the revised felony-murder rule of section 189, subdivision (e)(1) refers to someone who personally killed the victim and is not necessarily the same as a person who 'caused' the victim's death." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 4.)

### B.     *The Charges, the Jury Instructions, and Verdicts*

The entirety of the procedural history of appellant's case, including the charging documents, jury instructions, and verdicts, shows that he was tried and convicted as the person who committed the robbery, personally inflicted great bodily injury on the victim during the commission of that robbery, the victim died as a result, and he was the actual killer.

First, the charging history shows that appellant was held to answer after the initial preliminary hearing, and he was charged with the robbery of Ms. Rupp with an enhancement for the personal infliction of great bodily injury (§ 12022.7) and the special allegation that he personally inflicted great bodily injury on a person 60 years of age or older (§ 1203.09). After Ms. Rupp's death, he was indicted by the grand jury for robbery and murder "based on the same facts relied upon in the information." (*People v. Brown*, *supra*, F005832, at p. 2.) Thereafter, the original information and the indictment were consolidated, another preliminary hearing was held, and a new information was filed that charged appellant with count 1, murder of Ms. Rupp on or about and between August 19, 1984, and October 18, 1984; and count 2, robbery of Ms. Rupp on or about August 19,

23.

1984, with the section 1203.09 great bodily injury allegation. (*People v. Brown*, *supra*, F005832, at p. 2.)

Appellant was the only person charged in both the robbery and the murder; there were no codefendants or accomplices who were ever charged in this case.

At appellant's 1985 trial, the jury was instructed on two substantive offenses: murder and robbery. It was instructed on elements of felony murder in CALJIC No. 8.10, that a human being was killed, the killing was unlawful, and "the killing occurred during the commission nor attempt to commit a felony inherently dangerous to human life. Robbery is a felony inherently dangerous to human life." CALJIC No. 8.21 defined first degree felony murder as "[a]n unlawful killing of a human being, whether intentional, unintentional, or accidental, which occurs as a result of the commission or attempt to commit the crime of robbery, and where there was in the mind of the perpetrator the specific intent to commit such crime," and the specific intent to commit robbery must be proved beyond a reasonable doubt. As set forth above and in the direct appeal, the jury received lengthy instructions on proximate cause, concurrent causes, contributory causes, medical and intervening causes; and an unlawful injury accelerating death.

The jury was not instructed on principals or accomplices, direct or indirect aiding and abetting, the natural and probable consequences doctrine, target or non-target offenses, any other felonies aside from the charged offenses of murder and robbery, or culpability by being a major participant in the underlying felony.

Appellant was convicted of first degree murder and robbery, and the jury found true the section 1203.09 special allegation attached to count 2, that appellant personally inflicted great bodily injury on a person more than 60 years old in the commission of the robbery.

The entirety of the charges, instructions, and verdicts thus show appellant was charged and convicted as the perpetrator of the robbery, and the actual killer convicted

24.

under the felony-murder rule. This conclusion is further supported by the jury instruction for the section 1203.09 great bodily injury allegation attached to the robbery charge:

> "It is charged in the information, that in the commission of the offense therein described, the defendant, Cedric[k] Brown, did *personally inflict* great bodily injury upon Helen Rupp, a person 60 years or older. [¶] If you find the defendant guilty of robbery, it then will be your duty to determine, (1) whether at the time of the commission of the offense, Helen Rupp, was a person 60 years or older, and (2) that in the commission of the robbery, *defendant inflicted great bodily injury upon such person*. The burden is on the People to prove this beyond a reasonable doubt." (Italics added.)

Appellant asserts the jury's true finding on this special allegation is insufficient to show that he is ineligible for relief as a matter of law because that would require this court to make a factual finding: "[T]he jury's finding that [appellant] personally injured the decedent does not prove that the injury caused the decedent's death. The only way any court could reach that conclusion would be to review the facts and engage in fact-finding."

Appellant's argument would prevent this court from relying on the jury's verdicts to make any determinations on the issues raised in a section 1170.95 petition. "The mere filing of a section 1170.95 petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings. To the contrary, '[n]othing in the language of section 1170.95 suggests it was intended to provide redress for allegedly erroneous prior factfinding.... The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.)

In this case, the jury convicted appellant of murder and robbery and found this special allegation true, that appellant, the only perpetrator charged in this case, *personally inflicted* great bodily injury on a person more than 60 years old in the commission of the

robbery. Based on the jury instructions and verdicts, appellant was the actual killer as to count 1, murder, that occurred during the commission of the robbery. (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, abrogated on other grounds in *Lewis, supra*, 11 Cal.5th at pp. 961–962.)

### C.     *Causation*

As noted above, appellant argues the jury's true finding on the section 1203.09 allegation "does not prove that the injury caused the decedent's death," and such a conclusion can only be reached by improperly making factual findings at the prima facie phase. Appellant further argues there was conflicting evidence about whether the victim's health "and her consumption of Elavil" caused her death, "as opposed to a blood clot suffered during the robbery," and asserts that the instructions did not require the jury to find appellant personally inflicted a fatal injury. Appellant complains the instructions instead allowed the jury to convict him of murder by finding the robbery "set into motion a chain of events that eventually led to her death, regardless of the significance of his action on her death."

Appellant's arguments on this point raise what appears to have been the primary issue at trial, based on the procedural history of the charges and the jury instructions – whether appellant's personal infliction of great bodily injury during the commission of the robbery was the proximate cause of the victim's subsequent death.

Any challenge to the validity of the causation instructions or the jury's conclusions about causation are beyond the scope of the issues presented in a proceeding to decide if a section 1170.95 petition stated a prima facie case, particularly in a case where appellant was the only person charged, convicted, and found to have personally inflicted great bodily injury on the victim in the commission of the robbery. "A petitioner is entitled to relief under section 1170.95 only when he or she 'could not be convicted of first or second degree murder *because of* changes to section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subd. (a)(3).)" (*Lewis, supra*, 11 Cal.5th at p. 972, fn. 6,

26.

italics added.)  As previously explained, the purpose of section 1170.95 "is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*People v. Farfan, supra,* 71 Cal.App.5th at p. 947.)  The amendments to sections 188 and 189 did not amend, modify, or change the longstanding principles of causation or the jury's findings therein.

### D.    *Conclusion*

We thus conclude that appellant was ineligible for relief under section 1170.95 as a matter of law based on the history of the charges in this case, the instructions given to the jury, and the verdicts.  As a result, the court's failure to conduct a hearing, give reasons when it denied appellant's petition, and otherwise comply with the provisions of section 1170.95 when it decided not to issue an order to show cause were not prejudicial.

## DISPOSITION

The court's order denying appellant's section 1170.95 petition is affirmed.